DAVIS WRIGHT TREMAINE LLP
KELLI L. SAGER (State Bar No. 120162)
    kellisager@dwt.com
ROCHELLE L. WILCOX (State Bar No. 197790)
    rochellewilcox@dwt.com
DAN LAIDMAN (State Bar No. 274482)
    danlaidman@dwt.com
865 S. Figueroa Street, Suite 2400
Los Angeles, California 90017-2566
Telephone: (213) 633-6800 / Fax: (213) 633-6899

**ORIGINAL**

FILED
CLERK, U.S. DISTRICT COURT

JUN - 8 2015

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

Attorneys for Proposed Intervenors
LOS ANGELES TIMES COMMUNICATIONS LLC,
THE ASSOCIATED PRESS, and BLOOMBERG, L.P.

LOS ANGELES TIMES
COMMUNICATIONS LLC
JEFF GLASSER (State Bar No. 252596)
202 West First Street
Los Angeles, California 90012
Telephone: (213) 237-3760 / Fax: (213) 237-3810

Attorneys for Proposed Intervenor
LOS ANGELES TIMES COMMUNICATIONS LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

EUTIQUIO ACEVEDO MENDEZ, et al.,

Plaintiffs,

vs.

THE CITY OF GARDENA, et al.,

Defendants.

RECEIVED BUT NOT FILED
CLERK, U.S. DISTRICT COURT

JUN - 8 2015

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

Case No. 2:13-cv-9042 SVW (AJWx)

Judge Stephen V. Wilson

**NON-PARTY MEDIA ORGANIZATIONS LOS ANGELES TIMES COMMUNICATIONS LLC, THE ASSOCIATED PRESS, AND BLOOMBERG, L.P.'S MOTION TO INTERVENE FOR LIMITED PURPOSE OF REQUESTING ORDER UNSEALING SUMMARY JUDGMENT VIDEO EXHIBITS; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF ROCHELLE L. WILCOX WITH EXS. A-F**

Hearing Date: July 6, 2015
Time:         1:30 p.m.
Courtroom:    6

Trial Date: N/A

# TABLE OF CONTENTS

Page

I. SUMMARY OF ARGUMENT .................................................................. 1

II. THE MEDIA ORGANIZATIONS SHOULD BE PERMITTED TO
INTERVENE FOR THE LIMITED PURPOSE OF MOVING TO
UNSEAL THE VIDEOS. ............................................................. 4

III. THE PUBLIC AND PRESS HAVE A CONSTITUTIONAL AND
COMMON LAW RIGHT OF ACCESS TO COURT RECORDS AND
PROCEEDINGS. ...................................................................... 5

IV. THE CITY DEFENDANTS HAVE NOT MET AND CANNOT MEET
THEIR BURDEN OF OVERCOMING THE PUBLIC'S
CONSTITUTIONAL RIGHT OF ACCESS. ................................. 8

    A.    The Parties' Stipulated Protective Order Cannot Serve As A Basis
For Sealing Court Records. ............................................... 11

    B.    No Compelling Reason Exists For The Broad Secrecy In This
Case.................................................................................. 13

        1.    Cases Involving Gruesome Videos And Photos Are
Irrelevant. ................................................................. 13

        2.    No Privacy Interests Outweigh The Public's Interests
In Release Of The Videos. ........................................ 15

        3.    No "Law Enforcement Privilege" Justifies
Withholding The Videos. .......................................... 18

        4.    Fears Of Public Criticism Do Not Justify Sealing
Court Records........................................................... 19

    C.    The Public Interest Strongly Supports Release Of The Videos. ........ 20

    D.    The Blanket Sealing Order Encompassing All Of The Videotapes
Is Not Narrowly Tailored. ................................................. 22

V. CONCLUSION. ......................................................................... 23

i

MOTION TO INTERVENE, UNSEAL VIDEO EXHIBITS
DWT 26913373v8 0026175-000483

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF AUTHORITIES

Page(s)

**Cases**

Associated Press v. District Court,
    705 F.2d 1143 (9th Cir. 1983)............................................................3, 4

Beckman Industries, Inc. v. Int'l Ins. Co.,
    966 F.2d 470 (9th Cir. 1992)............................................................1, 4

Brown & Williamson Tobacco Corp. v. FTC,
    710 F.2d 1165 (6th Cir. 1983)..........................................................2, 6

California ex rel. Lockyer v. Safeway, Inc.,
    355 F. Supp. 2d 1111 (C.D. Cal. 2005) ......................................2, 2, 23

California First Amendment Coalition v. Woodford,
    299 F.3d 868 (9th Cir. 2002)...........................................................9, 19

CBS, Inc. v. District Court,
    765 F.2d 823 (9th Cir. 1985)............................................................5, 9

Citizens F.N.B., Princeton v. Cincinnati Ins.,
    178 F.3d 943 (7th Cir. 1999)..............................................................12

City of Los Angeles v. Superior Court,
    41 Cal. App. 4th 1083 (1996) .............................................................20

Commission on Peace Officer Standards & Training v. Superior Court,
    42 Cal. 4th 278, 165 P.3d 462, 64 Cal. Rptr. 3d 661 (2007) .................17

Deteresa v. Amer. Broad. Cos.,
    121 F.3d 460 (9th Cir. 1997)..............................................................16

Doe v. Marsalis,
    202 F.R.D. 233 (N.D. Ill. 2001) ...................................................20, 21

Elrod v. Burns,
    427 U.S. 347, 49 L. Ed. 2d 547, 96 S. Ct. 2673 (1976).........................2

Estate of Rodriguez v. City of Fort Wayne,
    2009 U.S. Dist. LEXIS 12380 (N.D. Ind. 2009)..................................15

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Foltz v. State Farm Mut. Auto. Ins. Co.*,
   331 F.3d 1122 (9th Cir. 2003)..................................................................*passim*

*Franklin v. Curtin*,
   2011 U.S. Dist. LEXIS 68476 (E.D. Mich. June 24, 2011)............................13, 14

*Gambale v. Deutsche Bank AG*,
   377 F.3d 133 (2d Cir. 2004)........................................................................8

*Globe Newspaper Co. v. Potaski*,
   868 F.2d 497 (1st Cir. 1989).......................................................................3

*Globe Newspaper Co. v. Superior Court*,
   457 U.S. 596, 73 L. Ed. 2d 248, 102 S. Ct. 2613 (1982)............................1, 2, 4, 5

*Gomes v. Fried*,
   136 Cal. App. 3d 924, 186 Cal. Rptr. 605 (1982)...................................20

*H.B. Fuller Co. v. Doe*,
   151 Cal. App. 4th 879, 60 Cal. Rptr. 3d 501 (2007)...............................12

*Hagestad v. Tragesser*,
   49 F.3d 1430 (9th Cir. 1995)....................................................6, 8, 9, 13

*In re Associated Press*,
   162 F.3d 503 (7th Cir. 1998)....................................................................1, 4

*In re Charlotte Observer*,
   882 F.2d 850 (4th Cir. 1989)....................................................................2, 3

*In re Coordinated Pretrial Proceedings in Petroleum Prod. Antitrust Litig.*,
   101 F.R.D. 34 (C.D. Cal. 1984)................................................................6

*In re Dep't of Investigation*,
   856 F.2d 481 (2d Cir. 1988)....................................................................18

*In re Midland Nat'l Life Ins. Co. Annuity Sales Prac. Litig.*,
   686 F.3d 1115 (9th Cir. 2012)................................................................7, 8

*In re Nat'l Broadcasting Co.*,
   653 F.2d 609 (D.C. Cir. 1981)................................................................6

*In re Providian Credit Card Cases*,
   96 Cal. App. 4th 292, 116 Cal. Rptr. 2d 833 (2002)................................12

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Kamakana v. City & County of Honolulu,
  2002 U.S. Dist. LEXIS 26921, 31 Media L. Rptr. 2340 (D. Haw.
  Nov. 22, 2002), aff'd, 447 F.3d 1172 (9th Cir. 2006) .............................................. 2

Kamakana v. City & County of Honolulu,
  447 F.3d 1172 (9th Cir. 2006) ............................................................ passim

King v. Conde,
  121 F.R.D. 180 (E.D.N.Y. 1988) ...................................................... 17, 21

Long Beach Police Officers Ass'n v. Superior Court,
  59 Cal. 4th 59, 325 P.3d 460, 172 Cal. Rptr. 3d 56 (2014) .............................. 17, 20

Matter of Continental Illinois Sec. Litig.,
  732 F.2d 1302 (7th Cir. 1984) .......................................................... 7

NBC Subsidiary (KNBC-TV) v. Superior Court,
  20 Cal. 4th 1178, 980 P.2d 337, 86 Cal. Rptr. 2d 778 (1999) ........................ 2, 3, 7

Newman v. Graddick,
  696 F.2d 796 (11th Cir. 1983) .......................................................... 7

Oregonian Publishing Co. v. District Court,
  920 F.2d 1462 (9th Cir. 1990) ............................................................ passim

Phillips ex rel. Estates of Byrd v. G.M. Corp.,
  307 F.3d 1206 (9th Cir. 2002) .......................................................... 8

Phoenix Newspapers v. District Court,
  156 F.3d 940 (9th Cir. 1998) ........................................................ 4, 18

Press-Enterprise Co. v. Superior Court,
  464 U.S. 501, 78 L. Ed. 2d 629, 104 S. Ct. 819 (1984) .......................... 3, 5, 9, 10

Press-Enterprise Co. v. Superior Court,
  478 U.S. 1, 19, 92 L. Ed. 2d 1, 106 S. Ct. 2735 (1986) ........................ 2, 5, 9

Prison Legal News v. Exec. Office for United States Attys.,
  628 F.3d 1243 (10th Cir. 2011) ...................................................... 13, 14

Pryor v. City of Clearlake,
  2012 U.S. Dist. LEXIS 112246 (N.D. Cal. Aug. 9, 2012) .............................. 14, 15

Publicker Industries, Inc. v. Cohen,
  733 F.2d 1059 (3d Cir. 1984) .......................................................... 6

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Ramirez v. County of Los Angeles,
    231 F.R.D. 407 (C.D. Cal. 2007) ........................................................................ 2, 17

Richmond Newspapers, Inc. v. Virginia,
    448 U.S. 555, 65 L. Ed. 2d 973, 100 S. Ct. 2814 (1980) ................................ *passim*

Rushford v. The New Yorker Magazine,
    846 F.2d 249 (4th Cir. 1988) .............................................................................. 12

San Jose Mercury News, Inc. v. District Court,
    187 F.3d 1096 (9th Cir. 1999) .................................................................... 1, 6, 8, 11

U.S. v. Amodeo,
    44 F.3d 141 (2d Cir. 1995) .................................................................................. 18

United States v. Antar,
    38 F.3d 1348 (3d Cir. 1994) ................................................................................. 9

United States v. Brooklier,
    685 F.2d 1162 (9th Cir. 1982) ........................................................................... 3, 9

United States v. Business of the Custer Battlefield Museum & Store,
    658 F.3d 1188 (9th Cir. 2011) ............................................................................ 16

United States v. Hunter,
    548 F.3d 1308 (10th Cir. 2008) .......................................................................... 15

United States v. Kaczynski,
    154 F.3d 930 (9th Cir. 1998) ......................................................................... 10, 22

Valley Broad. Co. v. District Court,
    798 F.2d 1289 (9th Cir. 1986) ............................................................................. 5

Waller v. Georgia,
    467 U.S. 39, 81 L. Ed. 2d 31, 104 S. Ct. 2210 (1984) ........................................... 5

Welsh v. City & County of San Francisco,
    887 F. Supp. 1293 (N.D. Cal. 1995) ................................................................... 20

Wiggins v. Burge,
    173 F.R.D. 226 (N.D. Ill. 1997) .................................................................... 17, 20

**Rules**

Federal Rule 26(c) .......................................................................................................... 12

MOTION TO INTERVENE, UNSEAL VIDEO EXHIBITS
DWT 26913373v8 0026175-000483

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## Constitutional Provisions

First Amendment............................................................................................*passim*

U.S. Const., amend. I.................................................................................................1

MOTION TO INTERVENE, UNSEAL VIDEO EXHIBITS
DWT 26913373v8 0026175-000483

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on Monday, July 6, 2015, at 1:30 p.m. or as soon thereafter as counsel may be heard before the above-referenced Court, located at 312 N. Spring Street, Los Angeles, California 90012, non-party media organizations Los Angeles Times Communications LLC, The Associated Press, and Bloomberg, L.P. ("Media Organizations"), will and hereby do move to intervene in this matter for the limited purpose of requesting the immediate unsealing of the videos submitted by Plaintiffs and Defendants, the City of Gardena, et al. (collectively, the "City Defendants") in support of and in opposition to the City Defendants' Motion for Summary Judgment, including the "car cam" videos showing the shooting incident at issue in this litigation, which this Court ordered sealed on February 11, 2015 (Docket 221). This Motion is made on the following grounds:

1.     The press has standing to assert a constitutional right of access to court records and proceedings. See, e.g., Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 609 n.25, 73 L. Ed. 2d 248, 102 S. Ct. 2613 (1982); Beckman Industries, Inc. v. Int'l Ins. Co., 966 F.2d 470, 473 (9th Cir. 1992) (seeking modification of protective order); San Jose Mercury News, Inc. v. District Court, 187 F.3d 1096, 1100 (9th Cir. 1999) (challenging sealing order).[1] Consequently, the Motion by Media Organizations to intervene for the limited purpose of seeking the unsealing of court records, including the video evidence at issue here, should be granted.

2.     Under the First Amendment and the federal common law, the press and the public have a presumptive right of access to dispositive motions, including

---

[1] The Ninth Circuit also has recognized that non-parties challenging restrictions on public access need not file a formal complaint in intervention. Id. See also In re Associated Press, 162 F.3d 503, 508 (7th Cir. 1998) ("Associated Press II") (reversing district court and instructing that "the Press ought to have been able to intervene in order to present arguments against limitations on the constitutional or common law right of access").

MOTION TO INTERVENE, UNSEAL VIDEO EXHIBITS
DWT 26913373v8 0026175-000483

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

summary judgment motions and supporting evidence. E.g., Foltz v. State Farm Mut. Auto. Ins. Co., 331 F.3d 1122, 1135-1136 (9th Cir. 2003). That right may be overcome only on a showing of "compelling reasons," articulated in specific, on-the-record findings, that a sealing order "is essential to preserve higher values and is narrowly tailored to serve that interest." Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 65 L. Ed. 2d 973, 100 S. Ct. 2814, (1980). See also Globe, 457 U.S. at 604-05; Foltz, 331 F.3d at 1135; California ex rel. Lockyer v. Safeway, Inc., 355 F. Supp. 2d 1111, 1125 (C.D. Cal. 2005); NBC Subsidiary (KNBC-TV) v. Superior Court, 20 Cal. 4th 1178, 1217-1218, 980 P.2d 337, 86 Cal. Rptr. 2d 778 (1999); Brown & Williamson Tobacco Corp. v. FTC, 710 F.2d 1165, 1179 (6th Cir. 1983).

3. No compelling interest justifies the permanent sealing of videos that show the conduct at the heart of this action, which Plaintiff and the City Defendants voluntarily submitted to the Court in support of and opposition to the City Defendants' Motion for Summary Judgment, nor does the Court's sealing order contain any findings that support a blanket sealing of the videos.

4. The Court's sealing order is not narrowly tailored to address any purported compelling interest.

For all these reasons, these court records should be unsealed immediately. As the United States Supreme Court has made clear, "[t]he loss of First Amendment rights, for even minimal periods of time, unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373, 49 L. Ed. 2d 547, 96 S. Ct. 2673 (1976). As one court explained in granting a newspaper's petition for extraordinary relief, the public's right of access to judicial records is "threatened whenever immediate access … is denied, whatever provision is made for later disclosure." In re Charlotte Observer, 882 F.2d 850, 856 (4th Cir. 1989).

This Motion is based on this Notice, on the accompanying Memorandum Of Points And Authorities, the Declaration of Rochelle L. Wilcox and Exhibits A-F; on all pleadings, records, and files in this case; on all matters of which judicial notice

2

MOTION TO INTERVENE, UNSEAL VIDEO EXHIBITS
DWT 26913373v8 0026175-000483

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1 | may be taken; and on such argument as may be presented at any hearing on this

2 | Motion.

3 |          Because the City Defendants have not met their burden under the rigorous

4 | constitutional and common law requirements for sealing evidence submitted in

5 | support of a potentially dispositive motion, and this Court's February 11, 2015 and

6 | February 18, 2015 Orders do not contain the "specific, on-the-record findings" that

7 | are required to support a sealing order, the Media Organizations respectfully request

8 | that the Court grant this Motion, vacate the sealing order entered on February 11,

9 | 2015, and provide immediate public access to the videos submitted by the parties at

10 | Dockets 219 and 220.

11 | DATED: June 8, 2015

DAVIS WRIGHT TREMAINE LLP
KELLI L. SAGER
ROCHELLE L. WILCOX
DAN LAIDMAN

LOS ANGELES TIMES COMMUNICATIONS LLC
JEFF GLASSER


By: _Kelli L. Sager /DL_
       Kelli L. Sager
Attorneys for Proposed Intervenors
LOS ANGELES TIMES
COMMUNICATIONS LLC,
THE ASSOCIATED PRESS,
and BLOOMBERG, L.P.

MOTION TO INTERVENE, UNSEAL VIDEO EXHIBITS
DWT 26913373v8 0026175-000483

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### SUMMARY OF ARGUMENT

Plaintiffs and the City of Gardena ("City Defendants") asked this Court to decide on summary judgment whether the City Defendants violated the civil rights of two unarmed men when City Officers shot them, killing one. Both sides lodged five police videos with the Court as evidence of what led to the shooting. Docket 219, 220. Although the City Defendants settled the case, reportedly for $4.7 million (Docket 239; Ex. A), the public remains in the dark about what transpired. Each side tells a different story. Plaintiffs describe a "cold-blooded shooting" of unarmed men whom City officers improperly detained as they investigated a bike theft report called in by the decedent's brother. Docket 155 at 1. The City Defendants maintain that the shooting was defensible, and their conduct objectively reasonable, alleging the decedent acted erratically, throwing an object, removing his baseball hat and moving his hands. Docket 152 at 1, 3, 6. The best evidence of what happened – the videos, which the parties describe as depicting the events leading up to the shooting – is sealed.

Continued sealing of the videos contravenes the public's presumptive right of access to evidence submitted in support of and in opposition to potentially dispositive motions, including summary judgment motions. This well-established presumption in favor of public access to court records is rooted in the Constitution (see, e.g., Oregonian Publishing Co. v. District Court, 920 F.2d 1462, 1467 (9th Cir. 1990)), as well as the common law (see, e.g., Foltz v. State Farm Mutual Auto Ins. Co., 331 F.3d 1122, 1135 (9th Cir. 2003)). As the Ninth Circuit explained in Foltz, courts in this Circuit must "start with a strong presumption in favor of access to court records" in civil cases. Id. This presumption applies to potentially dispositive pre-trial motions, like the Motion for Summary Judgment filed by the City Defendants, as well as evidence submitted in support of and in opposition to such motions, because

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1 | they have the potential to effectively substitute for a public trial. Id. It continues to

2 | apply even after the case has been dismissed. E.g., Kamakana v. City & County of

3 | Honolulu, 447 F.3d 1172, 1176, 1182, 1186-1187 (9th Cir. 2006).

4 | It also is well established that government actors, like the City Defendants,

5 | may not "abridge the free flow of information simply to protect [their] own activities

6 | from public scrutiny." Press-Enterprise Co. v. Superior Court, 478 U.S. 1, 19, 92 L.

7 | Ed. 2d 1, 106 S. Ct. 2735 (1986) ("Press-Enterprise II"). Yet that is exactly what the

8 | City Defendants have attempted to do here. Video exhibits showing the police

9 | shooting of an unarmed man – the event that gave rise to this lawsuit – were filed

10 | under seal at the City Defendants' request. Docket 221; see Dockets 219, 220. The

11 | only bases offered by the City Defendants were a stipulated protective order (Docket

12 | 44), and vague allegations devoid of any evidentiary support. Docket 220 at 5-7.

13 | The need for public scrutiny of this kind of government action is undisputable.

14 | As one federal district court recognized, in unsealing records related to allegations of

15 | police corruption in Honolulu, "[p]ublic access serves to promote the trustworthiness

16 | of the judicial process, to curb judicial abuses, and to provide the public with a more

17 | complete understanding of the judicial system, including a better perception of its

18 | fairness." Kamakana v. City & County of Honolulu, 2002 U.S. Dist. LEXIS 26921,

19 | 31 Media L. Rptr. 2340 (D. Haw. Nov. 22, 2002), aff'd, 447 F.3d 1172 (9th Cir.

20 | 2006). Similarly, openness is essential in this case, where the Gardena Police

21 | Department and its officers – "public servant[s] who must be accountable to public

22 | review" (Ramirez v. County of Los Angeles, 231 F.R.D. 407, 411 (C.D. Cal. 2007))

23 | – were accused of serious constitutional violations, and avoided a public trial only by

24 | paying $4.7 million to the plaintiffs.

25 | Under longstanding rules, a proponent of secrecy – like the City Defendants

26 | here – must demonstrate "compelling reasons" for secrecy. The court then must

27 | make specific, on-the-record findings that "closure is essential to preserve higher

28 | values and is narrowly tailored to serve that interest." California ex rel. Lockyer v.

2

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1   Safeway, 355 F. Supp. 2d 1111, 1124 (C.D. Cal. 2005) (quoting Press-Enterprise II,

2   478 U.S. at 9). But in this case, the videos were filed under seal without any

3   evidence supporting the purported need for secrecy. Docket 220. Neither this

4   Court's Order granting the sealing request (Docket 221), nor its one-word Order

5   denying Plaintiff's Ex Parte Application to unseal – "DENIED" (Docket 232 at 1) –

6   satisfied the constitutional requirement for on-the-record findings that are "specific

7   enough that a reviewing court can determine whether the closure order was properly

8   entered." Press-Enterprise Co. v. Superior Court, 464 U.S. 501, 510, 78 L. Ed. 2d

9   629, 104 S. Ct. 819 (1984) ("Press-Enterprise I"). Nor would the conclusory

10  assertions made by the City Defendants – that the videos contain images of bloody

11  clothing and could implicate third party privacy rights (Docket 220 at 5-7) – justify

12  sealing the videos. These are just the kind of generalized statements that the Ninth

13  Circuit has held are insufficient to justify the sealing of court records. See, e.g.,

14  United States v. Brooklier, 685 F.2d 1162, 1169 (9th Cir. 1982) (asserting "problems

15  of publicity" is not specific enough to justify closure).

16          The videos already have been kept from the public too long. As the California

17  Supreme Court has explained, a delayed release is "fundamentally inconsistent with

18  the basic value of a right of access." NBC Subsidiary (KNBC-TV) v. Superior

19  Court, 20 Cal. 4th 1178, 1220 n.44, 980 P.2d 337, 86 Cal. Rptr. 3d 778 (1999). See

20  also Associated Press v. District Court, 705 F.2d 1143, 1147 (9th Cir. 1983)

21  (vacating temporary sealing order and holding that even a 48-hour delay in the

22  release of presumptively public court records was improper because it "is a total

23  restraint on the public's first amendment right of access even though the restraint is

24  limited in time"); In re Charlotte Observer, 882 F.2d 850, 856 (4th Cir. 1989)

25  (explaining that the public's right of access is "threatened whenever immediate

26  access ... is denied," regardless of "whatever provision is made for later disclosure");

27  Globe Newspaper Co. v. Potaski, 868 F.2d 497, 507 (1st Cir. 1989) ("even a one to

28  two day delay [in access to court records] impermissibly burdens the First

---

3

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1  Amendment"; court invalidated statute requiring the temporary sealing of some court

2  records).  The videos submitted in support of and opposition to the City Defendants'

3  Motion for Summary Judgment were filed under seal four months ago, without

4  satisfying the First Amendment and common law requirements for sealing such

5  judicial records.  Docket 219, 220.  The Media Organizations therefore respectfully

6  request that the Court immediately unseal those videos.

## II.

## THE MEDIA ORGANIZATIONS SHOULD BE PERMITTED TO INTERVENE FOR THE LIMITED PURPOSE OF MOVING TO UNSEAL THE VIDEOS.

11  The press has standing to challenge the sealing of court proceedings and

12  records and to assert the public's – and its own – right of access to those records.

13  See, e.g., Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 609 n.25, 102 S. Ct.

14  2613, 73 L. Ed. 2d 248 (1982) (newspaper has right to be heard on issue of exclusion

15  from court proceedings).  The Ninth Circuit has held that non-parties, like the Media

16  Organizations, should be permitted to intervene for the purpose of challenging

17  limitations on the right of access.  E.g., Beckman Industries, Inc. v. Int'l Ins. Co., 966

18  F.2d 470, 473 (9th Cir. 1992).  See also In re Associated Press, 162 F.3d 503, 508

19  (7th Cir. 1998) ("the Press ought to have been able to intervene in order to present

20  arguments against limitations on the constitutional or common law right of access").

21  Not surprisingly, most of the Ninth Circuit's leading access decisions have involved

22  news organizations' efforts to open court proceedings and to unseal court records.

23  E.g., Phoenix Newspapers v. District Court, 156 F.3d 940, 944 (9th Cir. 1998)

24  (newspaper challenged restrictions on access to court records and proceedings);

25  Oregonian Publ'g, 920 F.2d at 1466 (same; court records); Associated Press, 705

26  F.2d at 1147 (same).

27  The Media Organizations should be permitted to intervene in this case for the

28  limited purpose of moving to unseal the video evidence submitted by the parties in

4

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1  support of and in opposition to the City Defendants' Motion for Summary Judgment.

2  The Media Organizations have been monitoring and reporting on this case, and the

3  circumstances that led up to it, since the shooting took place.  Exs. A-C; <u>see</u> <u>also</u> <u>id.</u>

4  Exs. D-F (reporting by other media organizations).  Access to the videos is critical

5  for the public to have a full and accurate account of the proceedings that occurred

6  before this Court, and the circumstances that led to the City Defendants' payment of

7  millions of dollars of taxpayer money to settle allegations of alleged police

8  misconduct.  The Media Organizations should be allowed to intervene to assert these

9  important public and press rights of access.

10  ### III.

11  ### THE PUBLIC AND PRESS HAVE A CONSTITUTIONAL AND COMMON

12  ### LAW RIGHT OF ACCESS TO COURT RECORDS AND PROCEEDINGS.

13  The Supreme Court and the Ninth Circuit have recognized broad, presumptive

14  constitutional and common law rights of access to court proceedings and records.

15  <u>E.g.</u>, <u>Richmond Newspapers v. Virginia</u>, 448 U.S. 555, 571, 65 L. Ed. 2d 973, 100 S.

16  Ct. 2814 (1980) (right of access applies to criminal trials); <u>Press-Enterprise I</u>, 464

17  U.S. at 505-508 (voir dire); <u>Waller v. Georgia</u>, 467 U.S. 39, 47, 81 L. Ed. 2d 31, 104

18  S. Ct. 2210 (1984) (suppression hearings); <u>Press-Enterprise II</u>, 478 U.S. at 12-13

19  (preliminary hearings).  This right of access is premised on "the common

20  understanding that 'a major purpose of [the First] Amendment was to protect the free

21  discussion of governmental affairs.'"  <u>Globe</u>, 457 U.S. at 604.  This presumption of

22  public access "is no quirk of history."  <u>Richmond Newspapers</u>, 448 U.S. at 569, 580

23  n.17.  Instead, as the Supreme Court has observed, openness allows "the public to

24  participate in and serve as a check upon the judicial process – an essential component

25  in our structure of self-government."  <u>Globe</u>, 457 U.S. at 606.

26  In <u>CBS, Inc. v. District Court</u>, 765 F.2d 823, 825 (9th Cir. 1985) ("<u>CBS II</u>"),

27  the Ninth Circuit reaffirmed that this "right of access is grounded in the First

28  Amendment and in common law, and extends to documents filed in pretrial

5

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1  proceedings as well as in the trial itself." It includes the right to obtain copies of

2  videotapes and audiotapes as they are introduced into evidence in the case. Valley

3  Broad. Co. v. District Court, 798 F.2d 1289, 1294 (9th Cir. 1986) (rejecting trial

4  court's stated reasons for refusing to provide public with copies of tapes introduced

5  into evidence); see also In re Nat'l Broadcasting Co., 653 F.2d 609, 612 (D.C. Cir.

6  1981) (appeals court reversed district court's denial of access to video and audio

7  tapes entered into evidence at trial; "it is now settled that the [common law right of

8  access] extends to records which are not in written form, such as audio and video

9  tapes") (footnotes omitted)).

10      This presumption also applies with equal force to civil proceedings. E.g.,

11  Foltz, 331 F.3d at 1135 ("in this circuit we start with a strong presumption in favor of

12  access to court records"); Kamakana, 447 F.3d at 1179, 1183-1185 (documents

13  related to investigation of alleged police corruption could not be sealed based on a

14  blanket protective order, especially in the absence of "compelling reasons sufficient

15  to outweigh the public's interest in disclosure"); San Jose Mercury News, Inc. v.

16  District Court, 187 F.3d 1096, 1102 (9th Cir. 1999) (public's common law right of

17  access in civil cases "creates a strong presumption in favor of access"); Hagestad v.

18  Tragesser, 49 F.3d 1430, 1434 (9th Cir. 1995) (extending common law right of

19  access to pretrial court documents in civil sexual abuse case; sealing is justified only

20  for "compelling reasons"; vacating sealing order and remanding for reconsideration);

21  see also In re Coordinated Pretrial Proceedings in Petroleum Prod. Antitrust Litig.,

22  101 F.R.D. 34, 42-43 (C.D. Cal. 1984) (holding that common law right of access

23  attaches to documents filed with the court in both civil and criminal cases, making

24  such records presumptively open).[2] See also Richmond Newspapers, 448 U.S. at 580

25

26      [2] Courts in other circuits are in accord. E.g., Publicker Industries, Inc. v.

27  Cohen, 733 F.2d 1059, 1069-1070 (3d Cir. 1984) (vacating sealing order; "the civil trial, like the criminal trial, plays a particularly significant role in the functioning of

28  the judicial process and the government as a whole," and "[p]ublic access to civil

MOTION TO INTERVENE, UNSEAL VIDEO EXHIBITS
DWT 26913373v8 0026175-000483

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

n.17 (Burger, C.J.) ("historically both civil and criminal trials have been presumptively open"); <u>NBC Subsidiary</u>, 20 Cal. 4th at 1208 (compiling authorities on this issue, and noting that "every lower court opinion of which we are aware that has addressed the issue of First Amendment access to civil trials and proceedings has reached the conclusion that the constitutional right of access applies to civil as well as criminal trials") (citations omitted; original emphasis).

These rights apply to motions for summary judgment and similar potentially dispositive motions. <u>Foltz</u>, 331 F.3d at 1135. The Court explained in <u>Foltz</u> that "materials attached to a summary judgment motion" are presumptively public, <u>even if they are the subject of a protective order</u>, "because 'summary judgment adjudicates substantive rights and serves as a substitute for trial.'" <u>Id.</u> (citation omitted). Consequently, the Court reversed an order sealing papers submitted with a summary judgment motion, finding that no "compelling reason" for secrecy was shown. <u>Id.</u> at 1137. Whether the motion is adjudicated is irrelevant; the presumption of access applies to all <u>potentially</u> dispositive motions, even if the court never rules on them. E.g., <u>In re Midland Nat'l Life Ins. Co. Annuity Sales Prac. Litig.</u>, 686 F.3d 1115, 1119-1120 (9th Cir. 2012) (presumption of access applied to <u>Daubert</u> motion that was not resolved before case settled). As the Ninth Circuit explained, "if a magistrate judge had ruled on the <u>Daubert</u> motion and excluded [the expert's]

trials, no less than criminal trials, 'plays an important role in the participation and free discussion of governmental affairs'"); <u>Brown & Williamson Tobacco Corp. v. FTC</u>, 710 F.2d 1165, 1170, 1179 (6th Cir. 1983) (vacating order sealing Federal Trade Commission report and other documents filed with the district court; the "policy considerations discussed in <u>Richmond Newspapers</u> apply to civil as well as criminal cases"); <u>Matter of Continental Illinois Sec. Litig.</u>, 732 F.2d 1302, 1308 (7th Cir. 1984) (court granted newspapers' request to inspect report prepared by corporation and admitted into evidence in shareholders' derivative suit, stating that the "policy reasons for granting public access to criminal proceedings apply to civil cases as well"); <u>Newman v. Graddick</u>, 696 F.2d 796, 801-802 (11th Cir. 1983) ("[C]ivil trials which pertain to the release or incarceration of prisoners and the conditions of their confinement are presumptively open to the press and the public").

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

opinion, plaintiffs surely would have challenged the order as dispositive ...." Id. at 1120.  Thus, because the Daubert motion was filed "'in connection' with pending summary judgment motions," the presumption of access applied.  Id. (citing San Jose Mercury News, 187 F.3d at 1102).

Finally, the presumption of access applies even after a case is settled or dismissed.  In Kamakana, for example, the Ninth Circuit ordered the records at issue unsealed although the case had settled, and the plaintiff had stipulated to dismiss all of his claims.  447 F.3d at 1176, 1182, 1186-1187.  Similarly, in Phillips ex rel. Estates of Byrd v. G.M. Corp., 307 F.3d 1206, 1209 (9th Cir. 2002), even though the Los Angeles Times' motion to unseal was filed after the case was dismissed, the Ninth Circuit ordered the district court to conduct a good cause analysis – the standard that applied to the discovery materials at issue there – and release the records unless it made a finding that the standard for sealing had been met.  Id. at 1211-1212 & n.1.  See also Hagestad v. Tragesser, 49 F.3d 1430, 1435 (9th Cir. 1995) (evaluating request for sealed documents after case dismissed); Gambale v. Deutsche Bank AG, 377 F.3d 133, 140 (2d Cir. 2004) (parties cannot overcome public's right of access to court records by stipulating to dismiss case).

Just as in these cases, the videos submitted by the parties in support of and in opposition to the City Defendants' Motion for Summary Judgment are subject to the public's constitutional and common law rights of access, and must be unsealed unless the City Defendants satisfy the rigorous prerequisites for sealing.  As discussed below, they have not met their burden and cannot do so.

## IV.

## THE CITY DEFENDANTS HAVE NOT MET AND CANNOT MEET THEIR BURDEN OF OVERCOMING THE PUBLIC'S CONSTITUTIONAL RIGHT OF ACCESS.

Where, as here, the public's constitutional rights of access apply to a court record or proceeding, the party seeking to seal documents or close proceedings must

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

meet rigorous constitutional and common law requirements.[3]

First, that party must present a compelling interest that purportedly justifies the sealing order, CBS II, 765 F.2d at 825, which the Court must be able to identify in specific, on-the-record findings. Press-Enterprise II, 478 U.S. at 13-14; Oregonian Publ'g, 920 F.2d at 1467. Generalized findings will not suffice. Brooklier, 685 F.2d at 1168; Hagestad, 49 F.3d at 1435. The findings must be "specific enough that a reviewing court can determine whether the closure order was properly entered." Press-Enterprise I, 464 U.S. at 510. See also United States v. Antar, 38 F.3d 1348, 1363 (3d Cir. 1994) ("particularized findings of compelling interest must be placed on the record before a hearing is closed or a record is sealed"). Thus, in Hagestad, 49 F.3d at 1435, the Ninth Circuit vacated the district court's order sealing certain discovery materials on the grounds that "the district court failed to articulate any reason in support of its sealing order," which meant that "meaningful appellate review [wa]s impossible." Here, too, the Court's sealing order is inadequate, because it does not contain any findings that support the drastic relief ordered. Docket 221; see also Docket 232.

Second, the Court must find that the party promoting secrecy has demonstrated that there is a "substantial probability" that the interest identified will be prejudiced absent closure and/or sealing. See, e.g., Press-Enterprise II, 478 U.S. 1, 14. This is a stringent standard; even in a case where a murder defendant was facing his fourth trial, the Supreme Court held that a blanket closure order was unjustified. Richmond Newspapers, 448 U.S. at 580-581

Third, any closure or sealing order must be narrowly tailored. For example, in Press-Enterprise I, the Supreme Court instructed that a sealing order had to be limited "to information that was actually sensitive," and restrict public access to "only such

---

[3] The court also must afford opponents of secrecy a reasonable opportunity to state their objections. See, e.g., Brooklier, 685 F.2d at 1167-1168.

9

MOTION TO INTERVENE, UNSEAL VIDEO EXHIBITS
DWT 26913373v8 0026175-000483

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

parts of the transcript as necessary to preserve the anonymity of the individuals

sought to be protected." 464 U.S. at 512-513. Applying this standard, in United

States v. Kaczynski, 154 F.3d 930, 932 (9th Cir. 1998), the Ninth Circuit redacted

small portions of a psychiatric report about the Unabomber to protect the privacy of

third parties, but granted the public access to the "vast bulk" of the report.

Finally, before any portion of the court proceeding or court record can be kept

from the public, the court must find that no less restrictive alternative exists to

achieve the overriding interest. See, e.g., Press-Enterprise I, 464 U.S. at 513.

Here, there is no conceivable basis upon which these strict constitutional

principles can be satisfied, as the City Defendants' evolving arguments for secrecy

make clear. When the disclosure of the videos was first discussed in this case, the

City Defendants limited their confidentiality claim to pre-trial use, conceding that

their request for a protective order would "not preclude plaintiffs from offering any

of these items into evidence as the Court may allow at the time of trial," and "only

pertains to the pre-trial use or disclosure of these items in the media prior to trial."

Docket 64 at 5. The only basis offered for the restriction was a vague concern about

safety – the kind of speculative assertion that the Ninth Circuit consistently has

rejected (e.g., Kamakana, 331 F.3d at 1182) – and the concern that the jury would be

tainted. Id. at 7-11; see also Docket 66 at 1 (reiterating "the limited nature of the

Defendants' position," i.e., that they objected to "the pre-trial use or disclosure of

these items in the media prior to trial"); Docket 66-1 ¶ 4 (same); Docket 188

(invoking same vague concerns for officer safety and possibly tainting jury).

The City Defendants' February 2, 2015, Application to file the video exhibits

under seal largely abandoned these arguments, and failed completely to meet their

evidentiary burden. Docket 220. This time, they invoked the stipulated protective

order previously entered by this Court, even though that order does not purport to

support their request for a permanent sealing order. Section A, infra. They also

asserted vague privacy concerns, an ambiguous "law enforcement privilege," and

10

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1    their fear of "public scandal" (Docket 220 at 5-7), none of which come close to

2    meeting their heavy burden of showing a "compelling" justification for sealing the

3    videos. Section B, _infra_. There is no serious dispute about the profound public

4    interest in the videos, which show the police shooting of two unarmed men that

5    resulted in the City's payment of $4.7 million to the plaintiffs. Section C, _infra_.

6    Finally, all of the videos have been sealed in their entirety – which is hardly the kind

7    of "narrowly tailored" order that the Supreme Court and Ninth Circuit have held that

8    the Constitution demands. Section D, _infra_.

9    **A.      The Parties' Stipulated Protective Order Cannot Serve As A Basis**

10   **For Sealing Court Records.**

11       The City Defendants initially urged this Court to enter an order sealing the

12   video exhibits in part because a dispute about their confidentiality designation had

13   been briefed to Magistrate Andrew J. Wistrich, and his decision was pending.

14   Docket 220 at 8. But the parties' settlement of the underlying action mooted that

15   concern. There is no longer any pending dispute, nor does the parties' prior dispute

16   justify any ongoing sealing of the video exhibits.

17       The City Defendants also invoked the Protective Order entered by this Court.

18   Docket 44; _see_ Docket 220 at 7-8. But Ninth Circuit law is clear that a stipulated

19   protective order does _not_ overcome the public's right of access or absolve the court

20   of its responsibility to make the rigorous and independent constitutional findings

21   necessary to seal judicial records involving a potentially dispositive motion. As the

22   Ninth Circuit held in San Jose Mercury News, 187 F.3d at 1102, 1103, stipulated

23   protective orders are "subject to challenge and modification, as the party resisting

24   disclosure generally has not made a particularized showing of good cause with

25   respect to any individual document," and only "compelling reasons" supported by

26   "specific factual findings" can justify sealing of judicial records submitted as a basis

27   for adjudication. Thus, if civil discovery materials are filed with the Court as part of

28   a dispositive motion, the "good cause" standard is superseded by the "compelling

11

MOTION TO INTERVENE, UNSEAL VIDEO EXHIBITS
DWT 26913373v8 0026175-000483

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

reasons" standard. See Foltz, 331 F.3d at 1138.

A party's reliance on a stipulated protective order does not justify sealing judicial records. As the Ninth Circuit held in Kamakana, 447 F.3d at 1182, for dispositive proceedings and the accompanying records (such as a court trial, or motion for summary judgment or motion to dismiss), the proponent of secrecy must identify specific "compelling reasons" overriding the public's presumptive right of access that the court endorses in on-the-record findings, before proceedings may be closed or records may be sealed. Id. at 1179. See also Rushford v. The New Yorker Magazine, 846 F.2d 249, 252 (4th Cir. 1988); Citizens F.N.B., Princeton v. Cincinnati Ins., 178 F.3d 943, 944 (7th Cir. 1999) (rejecting stipulated protective order as a basis for restricting access, noting that "[t]he parties to a lawsuit are not the only people who have a legitimate interest in the record compiled in a legal proceeding"); H.B. Fuller Co. v. Doe, 151 Cal. App. 4th 879, 891-892, 60 Cal. Rptr. 3d 501 (2007) (unsealing records that had been sealed pursuant to stipulated protective order); In re Providian Credit Card Cases, 96 Cal. App. 4th 292, 309-310, 116 Cal. Rptr. 2d 833 (2002) (same).[4]

In this case, the parties entered into a stipulated protective order without any particularized showing, solely to expedite discovery in the case. Docket 44 at 2. Plaintiffs disputed the City Defendants' claim of confidentiality, and expressly "reserv[ed] the right to seek judicial determination within 90-days of receipt of the documents by submitting any item in dispute for an in-camera review and determination by the Court." Id.[5] The parties did not agree that there was even

---

[4] Even for documents submitted to the Court as part of a nondispositive motion, the proponents of secrecy may not seal the documents absent meeting a showing of "good cause" under Federal Rule 26(c). Kamakana, 447 F.3d at 1179. Here, there is no question that a dispositive motion is involved.

[5] On July 10, 2014, the Plaintiffs asked the Court to review the video exhibits and other documents and remove the confidentiality designation. Docket 46.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

"good cause" to seal any documents – let alone the video exhibits specifically – and
their stipulation said nothing about Defendants' higher burden of showing
"compelling" reasons to seal evidence submitted in support of a dispositive motion.
Id. at 6.  On this record, it is clear that the Court has never made any finding that a
compelling justification exists to seal the video exhibits.  The City Defendants cannot
rely on the stipulated protective order to support their sealing request.

**B.      No Compelling Reason Exists For The Broad Secrecy In This Case.**

In evaluating whether sealing is justified, this Court should bear in mind that
"the party seeking access is entitled to a presumption of entitlement to disclosure.  It
is the burden on the party seeking closure … to present facts supporting closure and
to demonstrate that available alternatives will not protect his rights." Oregonian
Publ'g, 920 F.2d at 1466-1467 (emphasis added).  This is an onerous standard; any
sealing order must be based on "evidentiary support," id. at 1467, not on "hypothesis
or conjecture." Hagestad, 49 F.3d at 1434.  The City Defendants did not come close
to meeting their burden here.

**1.      Cases Involving Gruesome Videos And Photos Are Irrelevant.**

The City Defendants cite a few cases involving gruesome videos, photos, and
graphic descriptions in police reports, arguing that images of "the decedent body"
and bloody clothing justify wholesale sealing of the videos.  Docket 220 at 5.  But
the City Defendants' reliance on these cases simply demonstrates the dearth of
support for their position.

Two of the cases cited – Prison Legal News v. Exec. Office for United States
Attys., 628 F.3d 1243 (10th Cir. 2011), and Franklin v. Curtin, 2011 U.S. Dist.
LEXIS 68476, *5 (E.D. Mich. June 24, 2011) – involve photos and videos, but both
of these cases applied a much less demanding standard.  Prison Legal News involved
a request for access under the federal Freedom of Information Act, which does not
carry with it a constitutional presumption of access.  Under the standards applicable
to FOIA requests, the court held that the photos and video were exempt from

13

MOTION TO INTERVENE, UNSEAL VIDEO EXHIBITS
DWT 26913373v8 0026175-000483

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1   disclosure because they "'could reasonably be expected' to be an unwarranted

2   invasion of privacy interests." 628 F.3d at 1250. In Franklin, the court invoked the

3   "good cause" standard that applied in the Sixth Circuit. 2011 U.S. Dist. LEXIS

4   68476, *3.

5      Furthermore, both cases involved photos and video that were far more graphic

6   than the videos here, which the City Defendants' counsel has conceded are "not

7   overly gruesome." Docket 220, Grubb Decl. ¶ 4; compare Prison Legal News, 628

8   F.3d at 1248 (video showed "grotesque and degrading depiction of corpse

9   mutilation," including mutilation as it occurred); Franklin, 2011 U.S. Dist. LEXIS

10  68476, *3 ("crime scene videotape and photographs includ[ing] images of the nude

11  and semi-posed bodies of the petitioner's ex-wife and her two daughters, aged 10 and

12  8"). Finally, in both Prison Legal News and Franklin, the courts found that the

13  privacy interests of the victims' families outweighed the public interest in disclosure,

14  and the countervailing interest was not nearly as strong, since the visual images in

15  those cases did not depict the alleged crime or wrongful conduct at issue. Prison

16  Legal News, 628 F.3d at 1248, 1250; Franklin, 2011 U.S. Dist. LEXIS 68476, at *5.

17  Here, in contrast, the plaintiffs waived any privacy interests, and have fought to

18  obtain release of the videos. E.g., Docket 46, 226. In addition, the videos here show

19  the incident that is at the heart of this case – a police shooting of unarmed men on a

20  public street. The public interest in scrutinizing police conduct provides a much

21  greater counterbalance to any arguable privacy interest than in the cases cited by the

22  City Defendants.

23      The City Defendants' other cases are even more off-point. In Pryor v. City of

24  Clearlake, 2012 U.S. Dist. LEXIS 112246 (N.D. Cal. Aug. 9, 2012), the court sealed

25  unsubstantiated accusations against a police officer (which contained private

26  information of third parties), as well as information from the officer's personnel file

27  that had no bearing on the conduct alleged in the complaint, because any minimal

28  probative value was outweighed by the officer's privacy interests. Id. at *5-*7, *10-

14

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*12. Notably, even in that case, the court refused to seal Facebook postings, although they contained third party information, because of their relevance to the case and the absence of any expectation of privacy. Id. at *9. Similarly, in United States v. Hunter, 548 F.3d 1308, 1317 (10th Cir. 2008), in a brief paragraph without any analysis, the Court agreed to lodge two documents under seal because the statute at issue there "does not provide 'victims' with a right of access to the government's files." Id. (citation omitted). This case, too, has no relevance here.

In contrast, Estate of Rodriguez v. City of Fort Wayne, 2009 U.S. Dist. LEXIS 12380 (N.D. Ind. 2009), provides strong support for release of the videos. There, car cameras captured video of a police shooting following a car chase. Id. at *1. The court rejected a protective order, finding that the defendants failed to even meet the lower "good cause" standard that applied there. The court explained that "the dashboard video recordings in this case simply record an event that occurred on a public street, involving an incident that will also be described by eye-witnesses." Id. at *13. In addition, the defendants did not offer "any particular and specific demonstration of fact, for the relief they seek, and only conclusory, unsupported statements describing some ill-defined injury." Id. at *14. Here, too, the City Defendants offered no support for their vague, conclusory claims. The videos should be immediately unsealed.

### 2. No Privacy Interests Outweigh The Public's Interests In Release Of The Videos.

The City Defendants also have asserted vague privacy interests. Docket 220 at 5-6, §§ B, C. But the Ninth Circuit has made clear that "[s]imply invoking a blanket claim, such as privacy or law enforcement, will not, without more, suffice to exempt a document from the public's right of access." Kamakana, 447 F.3d at 1185. In Kamakana, the plaintiff's lawsuit alleged "retaliation for his reporting misconduct and illegal acts by other HPD officers." Id. at 1176. The trial court rejected the government's attempt to redact the names of the individuals involved from

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1  documents filed with the court, and only allowed the redaction of home addresses

2  and social security numbers. Id. at 1184-1185. The Ninth Circuit affirmed, holding

3  that despite the nature of the plaintiff's allegations, the trial court properly refused to

4  redact individual names because "the testimony and documents concerning this

5  matter are of significant public concern" and the names did not contain "'sensitive

6  personal information' or information that would be used for 'scandalous or libelous'

7  purposes." Id. at 1184. See also United States v. Business of the Custer Battlefield

8  Museum & Store, 658 F.3d 1188, 1195-1196 (9th Cir. 2011) (trial court abused its

9  discretion in sealing warrant materials, based on argument that "individuals identified

10 in warrants have privacy interests that may justify denying access," because

11 government "did not explain what concerns had been raised, whether they were

12 concrete rather than conjectural or how they constituted a compelling reason for

13 restricting" access).

14       The City Defendants' position here is equally without merit. The individuals

15 involved in the shooting have no privacy interest in events that occurred on a public

16 street. E.g., Deteresa v. Amer. Broad. Cos., 121 F.3d 460, 465-466 (9th Cir. 1997)

17 (rejecting privacy claim because plaintiff was videotaped "in public view from a

18 public place"). Assuming, for sake of argument, that any protected medical

19 information is revealed on the videos – even though the City Defendants have not

20 presented any evidence to support such an assertion – Plaintiffs have waived their

21 privacy rights by urging this Court to remove the confidentiality designation from the

22 video exhibits. E.g., Docket 46, 226. And even if the videos did reveal medical

23 information of a non-party – although the City Defendants have not met their burden

24 of proving that they do – the videos could be redacted to protect those interests. See

25 Section D, infra.

26       Finally, any suggestion that the officers have a privacy interest that would

27 warrant sealing must be rejected. Docket 220 at 6. California courts consistently

28 have recognized the public's legitimate interest in the activities and conduct of law

16

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

enforcement personnel.  See, e.g., Long Beach Police Officers Ass'n v. Superior Court, 59 Cal. 4th 59, 74, 325 P.3d 460, 172 Cal. Rptr. 3d 56 (2014) ("the public's significant interest in the conduct of its peace officers 'diminishes and counterbalances' an officer's privacy interest in keeping his or her name confidential"); Commission on Peace Officer Standards & Training v. Superior Court, 42 Cal. 4th 278, 300-301, 165 P.3d 462, 64 Cal. Rptr. 3d 661 (2007) ("[w]e do not view the fact of an individual's public employment … as a personal matter"; "Peace officers operate in the public realm on a daily basis, and identify themselves to the members of the public with whom they deal.  Indeed, uniformed peace officers are required to wear a badge or nameplate with the officer's name or identification number").

Federal courts also have been appropriately skeptical of privacy claims made by defendant police officers and law enforcement agencies with respect to information about their official conduct.  As the district court explained in Ramirez v. County of Los Angeles,

> The privacy interest in nondisclosure of professional records should
> be especially limited in view of the role played by the police officer as
> a public servant who must be accountable to public review.  Some
> requests might touch on intuitively more private domains, such as an
> officer's psychiatric history, but even disclosures having 'some effect
> on individual liberty or privacy' because of their personal nature are
> permissible when disclosure serves important public concerns.

231 F.R.D. at 411 (citations omitted; emphasis added) (quoting King v. Conde, 121 F.R.D. 180, 191 (E.D.N.Y. 1988)).  See also Wiggins v. Burge, 173 F.R.D. 226, 230 (N.D. Ill. 1997) ("[t]he defendants have not shown that the privacy interest of the police officers, the alleged chilling effect to internal investigations and the possibility of false allegations outweigh the significant public interest in the disclosure of these documents.  The public has a right to know whether allegations of police torture are

---

17

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1  appropriately investigated and resolved by the City of Chicago"). The City

2  Defendant's vague invocation of privacy concerns did not come close to meeting

3  their heavy burden.

### 3. No "Law Enforcement Privilege" Justifies Withholding The Videos.

6  Citing cases from other Circuits, the City Defendants assert that a "law

7  enforcement privilege" justifies the broad sealing they seek, because one of the

8  sealed videos might disclose some portion of police investigation. Docket 220 at 7.

9  Again, no <u>evidence</u> is offered to support this bald assertion. Moreover, the Ninth

10 Circuit squarely rejected an argument just like this one in <u>Phoenix Newspapers</u>, 156

11 F.3d at 950. In that case, a trial court sealed a hearing transcript because it "'ha[d]

12 been advised that the investigation is ongoing and that it is in a posture that the

13 disclosure of the transcript would constitute a serious risk of compromising the

14 investigation.'" <u>Id.</u> at 950. The Ninth Circuit reversed, concluding that there was no

15 evidence of any actual, specific threats to security that would be jeopardized by

16 release of the transcript. <u>Id.</u> The City Defendants have offered nothing other than

17 the same speculative assertions about "law enforcement techniques and procedures"

18 that the Ninth Circuit has found to be inadequate. The City Defendants also cannot

19 rely on an interest in protecting "law enforcement techniques and procedures"

20 because the shootings of unarmed men occurred here not in secret, but on the public

21 street outside a Carrows Restaurant.

22 Neither of the cases cited by the City Defendants support their demands for

23 wholesale secrecy of the videos. One of the two cases involved detailed police

24 investigatory records that were sought under FOIA – a wholly different circumstance

25 than the court records here, which do not detail police investigations. <u>In re Dep't of</u>

26 <u>Investigation</u>, 856 F.2d 481, 484 (2d Cir. 1988). In the other case, <u>U.S. v. Amodeo</u>,

27 44 F.3d 141, 147-148 (2d Cir. 1995), the appellate court merely acknowledged the

28 existence of the law enforcement privilege, and remanded the matter for

18

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

consideration by the trial court.  It has no relevance to the circumstances here.  This
purported justification for sealing also should be rejected.

### 4. Fears Of Public Criticism Do Not Justify Sealing Court Records.

In a last-ditch effort to justify their demand for secrecy, the City Defendants
make the remarkable claim that release of the videos "may result in unfounded
speculation" about the incident at issue, which they assert is a "legitimate concern
given the anti-police sentiment which has recently become so prevalent."  Docket
220 at 7.  This is the same type of speculative and wholly unfounded assertion that
the Ninth Circuit squarely rejected in Kamakana.  In that case, the Ninth Circuit
affirmed the trial court's refusal to redact names of individuals allegedly involved in
the wrongdoing (among other things), explaining that "the City's declarations, which
largely make conclusory statements about the content of the documents – that they
are confidential and that, in general, their production would, amongst other things,
hinder CIU's future operations with other agencies, endanger informants' lives, and
cast HPD officers in a false light" were "conclusory offerings" that "do not rise to the
level of 'compelling reasons' sufficiently specific to bar the public access to the
documents."  331 F.3d at 1182.  See also California First Amendment Coalition v.
Woodford, 299 F.3d 868, 880 (9th Cir. 2002) (rejecting claim by California state
prison officials that allowing public access to lethal injection executions would
jeopardize the safety of its staff; court found that prison officials "had presented no
evidence" that staff faced actual threats to their safety from performing the lethal
injection executions, and real motivation was concern that aspects of the "lethal
injection execution would be perceived as brutal by the public"); Oregonian Publ'g,
920 F.2d at 1467 (reversing sealing order "in the absence of specific evidence that
the defendant and his family would be placed in danger by revelation of the contents
of the plea agreement").

The City Defendants' offering here is even less substantive than in the cases

MOTION TO INTERVENE, UNSEAL VIDEO EXHIBITS
DWT 26913373v8 0026175-000483

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1  cited above.  They failed to submit a single declaration to support their sealing

2  request, let alone present any admissible evidence of actual safety concerns.  Their

3  real motivation – that members of the public might criticize police officers' conduct

4  – does not remotely justify sealing court records.

### C.   The Public Interest Strongly Supports Release Of The Videos.

6      There is a profound public interest in access to the videos that show the events

7  surrounding the police shooting of an unarmed man on a public street.  Courts have

8  recognized that "[t]he public has a strong interest in assessing the truthfulness of

9  allegations of official misconduct [by law enforcement personnel], and whether the

10  agencies responsible for investigating and adjudicating complaints of misconduct

11  have acted properly and wisely."  Welsh v. City & County of San Francisco, 887 F.

12  Supp. 1293, 1302 (N.D. Cal. 1995).  See also Doe v. Marsalis, 202 F.R.D. 233, 238

13  (N.D. Ill. 2001) (same); Wiggins, 173 F.R.D. at 229 (same).

14      Law enforcement officers have a unique role in our society.  "It is indisputable

15  that law enforcement is a primary function of local government and that the public

16  has a ... great[] interest in the qualifications and conduct of law enforcement officers,

17  even at, and perhaps especially at, an 'on the street' level[.]"  Gomes v. Fried, 136

18  Cal. App. 3d 924, 933, 186 Cal. Rptr. 605 (1982).  As the California Supreme Court

19  recently recognized, "[i]n a case such as this one, which concerns officer involved

20  shootings, the public's interest in the conduct of its peace officers is particularly great

21  because such shootings often lead to severe injury or death."  LBPOA, 59 Cal. 4th at

22  74; see also City of Los Angeles v. Superior Court, 41 Cal. App. 4th 1083, 1091

23  (1996) ("public interest w[ould] be better served" by the disclosure of information

24  relating to "claims of excessive force in the use of police dogs" by the Los Angeles

25  police than by the concealment of that information).

26      Given the importance of accountability, particularly from government officials

27  with the power to exercise lethal force, courts should require an even greater

28  countervailing interest to justify withholding from public view information about

20

MOTION TO INTERVENE, UNSEAL VIDEO EXHIBITS
DWT 26913373v8 0026175-000483

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

alleged misconduct by the police department and its officers. See, e.g., King, 121
F.R.D. at 190; Doe, 202 F.R.D. at 238. Although "[p]eople in an open society do not
demand infallibility from their institutions, [] it is difficult for them to accept what
they are prohibited from observing." Richmond Newspapers, 448 U.S. at 572.
These policies weigh heavily in favor of openness here, where the sealed videos
show the very conduct at issue in this litigation – which recently led to the $4.7
million settlement.

The public interest in the videos at issue here is heightened by the recent
events across the country, which have accentuated the need for complete information
related to police use of force. Protests in Baltimore after the deadly injury of a young
man in police custody,[6] and police killings of men in South Carolina[7] and Oklahoma[8]
(both caught on camera), are only a few of the recent events spurring the ongoing
public debate about police use of force. In Cleveland, video of police shooting a
child with a toy gun – which suggested that the officers' statements about the
shooting might have been inaccurate[9] – demonstrated the disparity that may

_____

[6] See The New York Times, "Scenes of Chaos in Baltimore as Thousands
Protest Freddie Gray's Death," By Sheryl Gay Stolberg and Stephen Babcock, April
25, 2015, available at http://www.nytimes.com/2015/04/26/us/baltimore-crowd-
swells-in-protest-of-freddie-grays-death.html.

[7] See The New York Times, "South Carolina Officer Is Charged With Murder
of Walter Scott," By Michael S. Schmidt and Matt Apuzzo, April 7, 2015, available
at http://www.nytimes.com/2015/04/08/us/south-carolina-officer-is-charged-with-
murder-in-black-mans-death.html.

[8] See The Los Angeles Times, "Oklahoma deputy who mistook gun for Taser
not properly trained, report says," By James Queally, April 24, 2015, available at
http://www.latimes.com/nation/nationnow/la-na-nn-tulsa-sheriffs-shooting-internal-
report-20150424-story.html.

[9] See The New York Times, "12-Year-Old Boy Dies After Police in Cleveland
Shoot Him," Nov. 23, 2014, available at http://www.nytimes.com/2014/11/24/us/
boy-12-dies-after-being-shot-by-cleveland-police-officer.html?_r=1 (discussing
police claim that boy threatened police); Washington Post, "Video shows Cleveland

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

sometimes exist between police claims about an incident and contemporaneous videos. These and other incidents across the country have demonstrated the need to provide complete, accurate information about police conduct, and the importance of public access to videos, which often prompt important public conversations and institutional change.

### D.   The Blanket Sealing Order Encompassing All Of The Videotapes Is Not Narrowly Tailored.

Even if the City Defendants had successfully demonstrated a compelling justification for sealing some specific portion of the videos – which they did not – that still would not warrant the blanket sealing of the entire videos, including the events leading up to the officers' actions in shooting unarmed men. Instead, the constitution and common law rights of access require that any sealing order be "narrowly tailored" – which the current blanket order is not.

In <u>Kaczynski</u>, 154 F.3d at 932, the Ninth Circuit rejected the type of blanket sealing that was allowed here. It redacted small portions of a psychiatric report about the Unabomber to protect the privacy of third parties, but granted the public access to the "vast bulk" of the report. Here, too, assuming, <u>arguendo</u>, that any portion of the videos can justifiably be sealed, the Court should order the remainder of the videos to be publicly released. The City Defendants' claim that a blanket order is necessary because redaction would be "ineffective" or require a lot of work does not justify violation of the constitutional and common law standards. Docket 220 at 9. If any portion of the videos are to be sealed, such an order must be "narrowly tailored" to address only the compelling interests, if any, that this Court finds sufficient to justify the presumptively unconstitutional sealing request.

---

officer shooting 12-year-old Tamir Rice within seconds," Nov. 26, 2014, available at http://www.washingtonpost.com/news/post-nation/wp/2014/11/26/officials-release-video-names-in-fatal-police-shooting-of-12-year-old-cleveland-boy/ (video shows that boy did not threaten officers).

---

22

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# V.

# CONCLUSION.

"The presumption of access exists because the citizens are entitled to observe, monitor, understand and critique their courts … because what transpires within our courtrooms belongs to our citizens in a fundamental way.  This is why we require not just a showing of some possible reason to justify closure of the court to the public, but a showing of a compelling one."  Safeway, 355 F. Supp. 2d at 1125.  This rule applies "even in the most mundane of cases that excite no media interest," id., and with added force in the present case, where the City Defendants have refused to release video of the shooting of unarmed men – the best evidence of whether the City's claims and conclusions regarding the shootings were correct.

Because no justification, much less a compelling one, was or could be offered to justify the sealing of the video evidence at issue here, The Media Organizations respectfully request that the Court grant this Motion, vacate its prior order sealing the video exhibits, and promptly provide public access to those exhibits.

DATED: June 8, 2015

DAVIS WRIGHT TREMAINE LLP
KELLI L. SAGER
ROCHELLE L. WILCOX
DAN LAIDMAN

LOS ANGELES TIMES COMMUNICATIONS LLC
JEFF GLASSER

By: _Kelli L. Sager_ RLW

Kelli L. Sager
Attorneys for Proposed Intervenors
LOS ANGELES TIMES
COMMUNICATIONS LLC,
THE ASSOCIATED PRESS,
and BLOOMBERG, L.P.

MOTION TO INTERVENE, UNSEAL VIDEO EXHIBITS
DWT 26913373v8 0026175-000483

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## DECLARATION OF ROCHELLE L. WILCOX

I, Rochelle L. Wilcox, declare:

1.      I am an attorney admitted to practice before all the courts in the State of California and before this Court. I am a partner in the law firm of Davis Wright Tremaine LLP, and one of the lawyers responsible for representing Proposed Intervenors Los Angeles Times Communications LLC ("The Times"), The Associated Press and Bloomberg, L.P. ("Media Organizations") in this action. The matters stated herein are true of my own personal knowledge, except for those matters stated on information and belief, which matters I believe to be true.

2.      Attached as **Exhibit A** is a true and correct copy of an article entitled "Privacy Often Trumps Transparency With Police Shooting Videos," Los Angeles Times, May 19, 2015. I obtained this article from The Times on June 5, 2015, and I am informed and believe that it is available on The Times' website, at http://www.latimes.com/local/crime/la-me-police-cameras-20150520-story.html#page=1.

3.      Attached as **Exhibit B** is a true and correct copy of an article entitled "L.A. County Coroner Identifies Man Killed By Gardena Police," Los Angeles Times, June 3, 2013. I obtained this article from The Times on June 5, 2015, and I am informed and believe that it is available on The Times' website, at http://www.latimes.com/local/lanow/la-me-ln-la-gardena-police-shooting-20130603-story.html.

4.      Attached as **Exhibit C** is a true and correct copy of an article entitled "Ricardo Diaz-Zeferino, 34," The Los Angeles Times, June 2, 2013. I obtained this article from The Times on June 5, 2015, and I am informed and believe that it is available on The Times' website, at http://homicide.latimes.com/post/ricardo-diaz-zeferino/.

5.      Attached as **Exhibit D** is a true and correct copy of an article entitled "Sheriff's Investigators Still Unclear On Events Leading To Fatal Police Shooting In

1

Gardena," The Daily Breeze, June 3, 2013.  I downloaded a copy of this article on

June 8, 2015, from The Daily Breeze website at http://www.dailybreeze.com/general-

news/20130603/sheriffs-investigators-still-unclear-on-events-leading-to-fatal-police-

shooting-in-gardena.

6.      Attached as **Exhibit E** is a true and correct copy of an article entitled

"Man Killed By Gardena Police Was Trying To Help Friends, Attorney Says," The

Daily Breeze, June 6, 2013.  I downloaded a copy of this article on June 8, 2015,

from The Daily Breeze website at http://www.dailybreeze.com/general-

news/20130606/man-killed-by-gardena-police-was-trying-to-help-friends-attorney-

says.

7.      Attached as **Exhibit F** is a true and correct copy of an article entitled

"Gardena Police Accused Of Civil Rights Violation In Deadly Shooting," Daily

News, July 25, 2013.  I downloaded a copy of this article on June 8, 2015, from The

Daily Breeze website at http://www.dailynews.com/general-news/20130725/gardena-

police-accused-of-civil-rights-violation-in-deadly-shooting.

I declare under penalty of perjury under the laws of the United States of

America and the State of California, that the foregoing is true and correct and that

this Declaration was executed on June 8, 2015, at Roseville, California.

Rochelle L. Wilcox

# Privacy often trumps transparency with police shooting videos

**By RICHARD WINTON**

MAY 19, 2015, 7:27 PM

ameras mounted inside patrol cars captured every moment.

With their guns drawn, Gardena police officers screamed instructions at three men on the sidewalk. The officers warned them to keep their hands above their heads, mistakenly believing that they had been involved in a robbery.

Exactly what happened next is in dispute, but what is undisputed is that the men were unarmed when police opened fire, killing one and seriously wounding another.

Afterward, the Gardena Police Department allowed the officers — over the objection of a sheriff's investigator — to review video of the incident. But the department has refused to make the videos public, even after the city agreed to pay $4.7 million to settle a civil rights lawsuit over the shooting.

Across the country, law enforcement agencies are equipping police and patrol cars with cameras to capture interactions between officers and the public. But many of those police forces, like Gardena's, do not release the recordings to the public, citing concerns about violating the privacy of officers and others shown in the recordings and the possibility of interfering with investigations.

That approach has drawn criticism from some civil rights activists who say that the public release of recordings is crucial to holding police accountable — especially if the officers involved in the incidents are allowed to view the videos.

Gardena Police Chief Ed Medrano defended his department's position as consistent with that of other law enforcement organizations around the country. He added that it was intended to protect the integrity of investigations as well as the privacy of officers and those who come into contact with police.

"The general public does not have an unfettered right to see every video that is taken by law enforcement," Medrano said in an email. "Thus, absent a court order to the contrary, many

Case 2:13-cv-09042-SVW-AJW    Document 248    Filed 06/08/15    Page 37 of 52    Page ID
#:4267
6/5/2015                        .ivacy often trumps transparency with police shooting videos        Times

agencies across the country, including Gardena, do not intend to release videos to the public."

In a court filing earlier this year, the city's lawyers argued that the videos do "not tell the whole story" about the shooting and that making them public could endanger the officers and their families. The attorneys said the current social climate since the killing of an unarmed man by police in Ferguson, Mo., last year had heightened the threat to the Gardena officers, who felt compelled to hire experts to remove personal information about them from the Internet.

In February, a U.S. District judge rejected a request by attorneys suing Gardena to lift an order preventing public release of the videos.

Attorney R. Samuel Paz, one of the lawyers representing the men who were shot and family members in the lawsuit, said he was disappointed with the judge's decision and the Police Department's efforts to keep the videos confidential.

"Departments speak a good game talking about transparency, but the reality is far from that," he said.

Whether to publicly release police videos and when to show recordings to officers have become two of the thorniest issues police departments are grappling with as many add dashboard cameras to cruisers and outfit patrol officers with body cameras.

In Seattle, the Police Department has uploaded videos from officer-worn body cameras onto YouTube after blurring the images to protect the privacy of officers and civilians.

The LAPD and other law enforcement agencies in California have withheld police video, citing a state law that exempts investigative records from disclosure even after an investigation has been completed. LAPD Chief Charlie Beck, whose department is purchasing 7,000 body cameras, has said he considers the recordings to be evidence and will generally not make them public.

Lindsay Miller, a senior research associate with the Police Executive Research Forum, which has issued guidelines on using police body cameras, said it is important for law enforcement to balance the privacy of people who come into police contact with the need to be transparent.

"By withholding all footage, it kind of undermines the transparency rationale," she said.

The Gardena shooting occurred about 2:30 a.m. on June 2, 2013, after a bicycle was stolen from outside a CVS Pharmacy on Western Avenue. A police dispatcher mistakenly told officers that the crime was a robbery, which usually involves a theft using weapons or force, and officers headed to the area in search of two suspects.

Sgt. Christopher Cuff saw two men riding bicycles east on Redondo Beach Boulevard. The men

were friends of the bike theft victim and were searching for the missing bicycle. Mistaking them for the thieves, Cuff ordered the men to stop and put their hands in the air, according to a district attorney's memo written by a prosecutor who reviewed the police videos.

Ricardo Diaz Zeferino, whose brother owned the stolen bicycle, ran up to his friends as they stood before the police car. The dash camera video captured him yelling at the sergeant, who screamed in English and Spanish for Diaz Zeferino to stop advancing, the district attorney's memo said.

Diaz Zeferino raised his hands, pounded his chest with both hands and said something that was inaudible, the memo said. One of his friends later told investigators that Diaz Zeferino was explaining that police had stopped the wrong people.

Two more police cars arrived, and three officers emerged with guns drawn.

The patrol car video showed Diaz Zeferino dropping his hands and reaching to his right waistband or rear right pocket and making a tossing motion, dropping an object on the ground, the district attorney's memo said. He raised his hands, then repeated the move and removed something from his left rear pocket, the memo said.

"You do it again, you're going to get shot," yelled an officer on the video, according to the memo.

Diaz Zeferino removed his baseball hat and lowered his hands. As he began to raise his hands again, three of the officers opened fire, the district attorney's memo said.

Diaz Zeferino, 35, died after being struck by eight hollow-point bullets fired by officers. A single round hit one of the other two men, Eutiquio Acevedo Mendez, in his back, leaving bullet fragments near his spine. In a court filing, the city said Acevedo Mendez "was inadvertently struck with a bullet."

The criminal investigation of the shooting was assigned to Det. Jeffrey Leslie of the Los Angeles County Sheriff's Department, which handles probes of Gardena police shootings. Leslie testified that he voiced "displeasure over the idea of [the officers] watching the video prior to me interviewing them," according to a transcript of his deposition in the civil lawsuit.

Nevertheless, following the department's policy, Gardena police allowed the officers to watch the recordings before talking to Leslie.

The Police Executive Research Forum recently recommended that officers be allowed to review video recordings before making a statement. Such a practice helps ensure accuracy and is favored by most police executives, the organization said.

But Michael Gennaco, a law enforcement consultant who until last year worked as a civilian

watchdog of the Sheriff's Department, warned that officers who view video before giving a
statement can shape their accounts based on the recording.

"Those conducting police oversight don't favor that," he said. The L.A. County Sheriff's Department
requires deputies to provide an initial statement about a force incident before reviewing video.

The prosecutor who reviewed the shooting, Deputy Dist. Atty. Rosa Alarcon, concluded in her
memo that Diaz Zeferino showed a complete disregard for the officers' orders and that toxicology
tests after his death were positive for alcohol and methamphetamine. The videos, she wrote,
showed that the officers could not see Diaz Zeferino's right hand as he dropped it toward his
waistband and "believed he was going to reach for a weapon."

Paz, one of the lawyers who sued the city, disagreed, saying the videos show that Diaz Zeferino's
right hand was clearly empty and in front of his body when the shots were fired. He said the videos
show officers were giving confusing orders and that Acevedo Mendez was shot despite keeping his
hands above his head.

Medrano said the officers who opened fire — Christopher Mendez, Christopher Sanderson and
Matthew Toda — are still on patrol. He said in a recent email that the department's internal
investigation to determine whether discipline is warranted would resume once the civil litigation is
complete. A judge finalized the settlement and dismissed the case earlier this week.

Under California law, the outcome of the disciplinary investigation will remain confidential.

Acevedo Mendez, whose stomach bears a 7-inch scar from where doctors removed the bullet, said
he wants the public to have access to the videos.

"They need to see what happened.... We had our hands up. We didn't have any guns. They just
shot," he said. "They killed my friend for no reason."

*richard.winton@latimes.com*

Copyright © 2015, Los Angeles Times

# Los Angeles Times   ARTICLE COLLECTIONS

← Back to Original Article

# L.A. County coroner identifies man killed by Gardena police

June 03, 2013 | By Jean Merl

A man shot and killed by Gardena police officers was identified Monday as 34-year-old Ricardo Diaz-Zeferino.

Diaz-Zeferino, whose city of residence was not immediately available, was shot about 2:30 a.m., when officers responded to a robbery call at a drug store in the 15700 block of Western Avenue, the L.A. County Sheriff's Department said.

En route to the scene of the robbery, which police were told involved a bicycle, an officer in the 1600 block of Redondo Beach Boulevard spotted two men on bicycles coming from the direction of the robbery.

He tried to detain the men but one acted "strangely" and did not follow orders, said sheriff's Deputy Lilian Peck.

Soon other officers arrived. So did Diaz-Zeferino, who authorities said stepped between officers and the two detainees. Instead of complying with officers' commands, he reached for his waistband area and advanced toward the officers, Peck said in a written statement.

Several officers, believing Diaz-Zeferino was about to shoot them, fired, striking him in the upper body. He was pronounced dead at the scene.

One of the other two men also was shot and taken to a hospital, where he was listed in stable condition, Peck said.

No officers were injured.

**ALSO:**

Limited search continues for man swept over Yosemite waterfall

Crews battling Powerhouse fire dig in for another day of heat, wind

Santa Monica High seniors campaigning to get Obama to graduation

jean.merl@latimes.com

Twitter: @jeanmerl

---

**Los Angeles Times**   Copyright 2015 Los Angeles Times          Index by Keyword | Index by Date | Privacy Policy | Terms of Service

Leaflet (http://leafletjs.com) | Map data (c) OpenStreetMap (http://www.openstreetmap.org/) contributors, CC-BY-SA
(http://creativecommons.org/licenses/by-sa/2.0/)

f  𝕏  ➤  ✉  🖨

# Ricardo Diaz-Zeferino, 34

POSTED JUNE 2, 2013

Ricardo Diaz-Zeferino, a 34-year-old Latino, was shot and killed by police on Sunday, June 2, in the 1600 block of West Redondo Beach Boulevard in Gardena, according to L.A. County coroner's records.

Gardena police officers responded to a reported robbery at a drugstore in the 15700 block of Western Avenue in Gardena, according to an L.A. County Sheriff's Department news release.

The caller said that a bicycle had been stolen and two Latinos were involved.

As an officer arrived on the scene, he saw two men on bicycles on Redondo Beach Boulevard coming from the direction where the alleged robbery occurred, the release said. The officer attempted to detain the two men, issuing commands in English and Spanish.

One of the men, according to the department, "behaved strangely and did not follow orders." As more officers arrived to help,  Diaz-Zeferino, who was not one of the men on the bikes, intervened, placing himself between the officers and the two other men.

Officers asked Diaz-Zeferino to place his hands in the air. According to the officers' account, Diaz-Zeferino instead reached for his waistband and advanced toward the officers. Several of the officers fired at Diaz-Zeferino, striking him in the upper torso.

He died at 2:45 a.m., coroner's records show.

A sheriff's investigator told the Daily Breeze (http://www.dailybreeze.com/news/ci_23380917/sheriffs-investigators-still-unclear-events-leading-fatal-police) that Diaz-Zeferino probably had no connection to the robbery. Gardena

police also told the newspaper that an audio recording would be made available in the next few weeks.

Neither the Sheriff's Department or Gardena police officials would comment to the Daily Breeze on whether Diaz-Zeferino had a weapon.

An attorney for the Diaz-Zeferino family told the newspaper (http://www.dailybreeze.com/news/ci_23407656/man-killed-by-gardena-police-was-trying-help) that he was trying to tell police that the men they had stopped did not commit the crime.

"He was trying to tell the cops that they are not the ones who stole the bicycles," Richard Samuel Paz said.

Anyone with information about the shooting is asked to contact the sheriff's homicide bureau at (323) 890-5500. Those wishing to remain anonymous can contact Crime Stoppers at (800) 222-8477.

-- Nicole Santa Cruz



JUNE 2, 2013
Roberto Lombera, 34

(/post/roberto-lombera/)

JUNE 2, 2013
Samuel Earl Burge, 21

(/post/samuel-earl-burge/)
**MORE FROM THE HOMICIDE REPORT**

---

## One reader comment:

❝

ricardo was my friend and he was a cool down to earth guy who likes soccor and truly will be missed

— jose garcia
May 22, 2015 at 3:54 p.m.

---

Share a memory or thought about Ricardo Diaz-Zeferino

Before you post, here are some answers to frequently asked questions:

- Why does the Homicide Report give the race of victims and suspects? (/about/#race)
- Why does the Homicide Report list killings by police? (/about/#police)

Remember, all posts are approved by a Times staffer. Profanity and personal attacks will not be approved.

**Name:**

**Email address:**

**Comment:**

Preview

Email addresses are not republished or used for marketing purposes.



ADVERTISEMENT

(http://www.latimes.com/)

Terms of Service (http://www.latimes.com/lat-terms,0,7374802.story) | Privacy Policy (http://privacy.tribune.com) | About Our Ads (http://www.latimes.com/lat-about-our-ads,0,3875412.htmlstory) | © 2013 (http://www.latimes.com/services/site/la-reprint-request-splash,0,6731163.htmlstory) | About this site (http://www.latimes.com/about/)

## Sheriff's investigators still unclear on events leading to fatal police shooting in Gardena

*By Brian Charles & Larry Altman , Staff Writers*        DailyBreeze.com

The man shot and killed by Gardena police over the weekend after he reportedly interfered with the detention of two robbery suspects likely had no connection to the crime, a Los Angeles County sheriff's investigator said Monday.

As detectives began to sift through the evidence in the Sunday officer-involved shooting of 34-year-old Ricardo Diaz-Zeferino, several unanswered questions bubbled to the surface Monday.

Investigators now question whether Diaz-Zeferino or the two men pursued by Gardena police -- including one who also was shot but is expected to survive -- had anything to do with the reported robbery.

"Based on the investigation, I don't believe any of them were involved in a robbery," said Detective Jeffrey Leslie, who is heading up the investigation for the Sheriff's Department, which handles police shootings in Gardena so as to avoid any potential conflict of interest.

Leslie also expressed doubts about the initial report of a robbery.

"What was reported by a security guard may not have fallen within the legal definition of a robbery," he said. "Where the mix-up transpired, I don't know."

Gardena officials said Monday that an audio recording of the 9-1-1 call made by the security guard would be released to the public in the next two weeks.

Meanwhile, Gardena police Sgt. Erick Lee said his department still believes that Diaz-Zeferino and the men detained by officers were connected to the theft of a bicycle in the CVS parking lot, which drew officers to the scene.

"I don't know to what extent that they were involved ... there was some connection," Lee said.

The three officers involved in the shooting have all been placed on administrative leave. Their names were not released on Monday.

Initial reports by the Sheriff's Department said the Gardena police officers believed they were responding to a robbery. The officers arrived at the scene in the 15700 block of Western Avenue just before 2:30 a.m. Sunday.

One officer saw two men on bicycles coming from where the robbery had occurred. He attempted to detain them, according to a statement Monday from the Sheriff's Department.

"During the attempt to detain the two men, the officer voiced commands in English and Spanish," said a Sheriff's Department statement. "One of the men, however, behaved strangely and did not follow orders. Simultaneously, other police officers arrived at the

scene."

Diaz-Zeferino reportedly approached as the officers tried to detain the men. He placed himself between the officers and the men, Leslie said.

"The officers gave him commands to place his hands in the air, but the suspect did not comply," the statement said. "Instead, he reached for his waistband area and advanced toward the officers."

Several officers then shot Diaz-Zeferino in the upper body. The officers also shot the bicyclist in the 1600 block of Redondo Beach Boulevard, a block from the CVS lot.

Neither the Sheriff's Department nor the Gardena Police Department would comment on whether Diaz-Zeferino or the other men pursued by officers were armed.

## Man killed by Gardena police was trying to help friends, attorney says

*By* DailyBreeze.com

Ricardo Diaz-Zeferino was running to the aid of two friends when he was gunned down by Gardena police in Sunday's predawn hours, according to the attorney for the slain man's family.

Investigators' initial statements indicated that the officers told Diaz-Zeferino "to place his hands in the air, but the suspect did not comply" and that the man "reached for his waistband area and advanced toward the officers."

But in this past week, witnesses to the shooting have given accounts that contradict those by law enforcement.

"He didn't reach for his waist," said Richard Samuel Paz, an attorney for the Diaz-Zeferino family as well as two witnesses to the shooting. "He was trying to explain and gesticulating with his hands near his chest."

The investigation into the officer-involved shooting is being handled by the Los Angeles County Sheriff's Department, which is routine for such cases in Gardena.

Three police officers involved in the shooting have been placed on paid administrative leave.

Paz didn't say whether Diaz-Zeferino's family plans to file a lawsuit against the police or the city.

But the lawyer said he has started his own investigation, and interviewed the three men who were with Diaz-Zeferino on the night of the shooting.

That night, Diaz-Zeferino was having drinks at Mis Amigo's Bar in the 1700 block of Redondo Beach Boulevard with Garcia Jose Amado and Eutiquio Acevedo as well as his brother, Augustin de Jesus Reynoso.

Like Diaz-Zeferino, the other men were cooks in Asian restaurants that dot the stretch of Western Avenue just north of Redondo Beach Boulevard.

"Saturday night, (Diaz-Zeferino) and another worker left the restaurant when their shifts ended and went to a nearby bar, Amigos," said Chang Moon, who worked alongside Diaz-Zeferino at Guejit, a Gardena restaurant owned by Moon's mother. "It was pay day."

Sometime after midnight, Reynoso's crossed the street and walked into a CVS to buy a lottery scratch-off ticket.

Reynoso left his bike outside the store and it was stolen. A CVS employee called 9-1-1 reporting the crime.

Somehow the theft report was misinterpreted as a robbery, police Lt. Steve Prendergast said.

"The information that was dispatched to the officers was a robbery call. The dispatch said there were unknown weapons," Prendergast said. "Generally, that means they don't know if weapons are involved in the crime."

Officers racing to the scene saw Amado and Acevedo riding their bikes, and stopped the two men in front of Carrows restaurant in the 1600 block of Redondo Beach Boulevard to question whether they were the suspects to the reported robbery, Prendergast said.

Diaz-Zeferino, who was on foot, was waving his arms and running up the street to tell the police the men they had stopped did not commit the crime, the family lawyer said.

"He was trying to tell the cops that they are not the ones who stole the bicycles," Paz said.

When the shots rang out, patrons inside the Carrows dove to the floor, according to the night manager, who spoke on the condition of anonymity.

The manager said Diaz-Zeferino's hands were not by his waistband but in the air. Acevedo and Amado made similar statements.

"The guy they killed had his hands up. I know that," the manager said. "You could see his arms high up in the air."

A single shot rang out, followed by a pause and then a flurry of shots, the manager said.

Acevedo "was struck in the back and had his hands up at the time he was shot. He was facing away from the officers," Paz said.

Flowers and votive candles mark where Diaz-Zeferino was gunned down. His picture adorns the memorial. At Mis Amigos, a box with Diaz-Zeferino's picture taped to the side rests on the bar. The box has a slot cut into the top to collect money for Diaz-Zeferino's family.

Moon, who knew Diaz-Zeferino for more than 10 years, is having trouble making sense of the tragedy.

"It happened over a bike that's maybe worth $200. They didn't have to shoot him," Moon said.

The Police Department said it will release an audio copy of the 9-1-1 call within the next two weeks.

Case 2:13-cv-09042-SVW-AJW   Document 248   Filed 06/08/15   Page 48 of 52   Page ID
#:4278
6/8/2015                        Gardena police accused of civil rights violation in deadly sh...g

## Gardena police accused of civil rights violation in deadly shooting

*By Brian Charles, Staff Writer*                                                    DailyNews.com

The family and friends of a man killed by Gardena police officers have accused the city and several members of its Police Department, including Chief Ed Medrano, of civil rights violations and excessive force, according to a claim filed this week.

The documents filed late Wednesday in Gardena City Hall allege the officers who shot and killed Ricardo Diaz-Zeferino on June 2 were "negligent in their duties as law enforcement officers, negligent in the manner in which they used force, and this negligence caused the harm, pain and suffering, and emotional distress."

The claim also accuses the three officers at the scene of assault and battery against Diaz-Zeferino and his companions, Jose Amado-Garcia and Eutiquio Acevedo-Mendez.

According to the claim, Acevedo-Mendez was shot in the back and "suffered permanent injuries."

Furthermore, it alleges Medrano knew about a pattern of excessive force used by the same three officers connected to the shooting of Diaz-Zeferino.

Amado-Garcia and Acevedo-Mendez, as well as the family of Diaz-Zeferino, are seeking an undisclosed amount in monetary damages.

With the Los Angeles County Sheriff's Department conducting an investigation into the officer-involved shooting, the Gardena Police Department issued a measured response Thursday to the claim.

"We are aware that the city has been provided a notice of claim relative to the officer-involved shooting which occurred on June 2, 2013, in the city of Gardena," said Lt. Steve Prendergast, the Gardena police spokesman, in a emailed statement. "We take seriously the allegations of excessive force on the part of members of our city and we are conducting a thorough investigation into the allegations made by the claimant. Due to the pending litigation, we are unable to provide a statement at this time."

The names of the officers involved in the shooting have not been released by the department and did not appear in the lawsuit. The three cops were placed on administrative leave, but have since returned to "full duty," according to the department.

"We could file a California public records act request asking the department to release the names of the cops, but there is a provision in the law that says if they are part of pending litigation the department doesn't have to turn over the names," said Samuel Paz, the attorney for Diaz-Zeferino's family and the two other men who joined in the claim against the city.

Diaz-Zeferino, Acevedo-Mendez and Amado-Garcia were on their way home when a bike belonging to a fourth man, Augustin De Jesus Reynoso, was stolen in front of the CVS

Pharmacy at the corner of West Redondo Beach Boulevard and Western Avenue.

Diaz-Zeferino, who was on foot, and Acevedo-Mendez and Amado-Garcia, who were on their
bicycles, began searching the area around the CVS for the bike when the three encountered
Gardena police officers in front of the Carrows Restaurant at 1638 W. Redondo Beach Blvd.
The police were heading to the scene after the CVS store security guard called 9-1-1 to
report the stolen bicycle.

Initial reports from the Gardena Police Department indicate the officers thought Acevedo-
Mendez and Amado-Garcia were the suspects who had stolen De Jesus Reynoso's bicycle.

Diaz-Zeferino ran toward the cops, who had drawn their weapons on Amado-Garcia and
Acevedo-Mendez.

One witness said the man was waving his hands in the air and yelling to the cops in English
that Acevedo-Mendez and Amado-Garcia were not suspects but, in fact, two friends who
were searching for the stolen bike.

The officers shot Diaz-Zeferino, a Gardena cook, eight times. Two of the shots struck him in
the back.

The Sheriff's Department was not available for comment. But when the department concludes
its investigation, it will present its findings to the District Attorney's Office, which will decide
whether to file criminal charges against the officers.

brian.charles@sgvn.com

## PROOF OF PERSONAL SERVICE BY HAND DELIVERY
### (Secretary)

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Davis Wright Tremaine LLP, Suite 2400, 865 South Figueroa Street, Los Angeles, California 90017-2566.

On June 8, 2015, I caused to be hand-served through **Global Network Legal Support, 316 West 2nd Street, Suite 1110, Los Angeles, CA 90012**, the foregoing document described as:

**NON-PARTY MEDIA ORGANIZATIONS LOS ANGELES TIMES COMMUNICATIONS LLC, THE ASSOCIATED PRESS, AND BLOOMBERG, L.P.'S MOTION TO INTERVENE FOR LIMITED PURPOSE OF REQUESTING ORDER UNSEALING SUMMARY JUDGMENT VIDEO EXHIBITS; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF ROCHELLE L. WILCOX WITH EXS. A-F**

on each person on the attached Service List.

Executed on June 8, 2015, at Los Angeles, California.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

_____          _____
Ellen Duncan                                     Signature
Print Name

**Global Network Legal Support**

_____          _____
Print Name                                        Signature

i

## Service List

| Service Type | Counsel Served | |
|---|---|---|
| **Hand Service** | Mark Pachowicz<br>Kathleen Leslie Crouch<br>LAW OFFICES OF MARK PACHOWICZ<br>771 East Daily Drive<br>Suite 230<br>Camarillo, CA 93010 | |
| **Hand Service** | Raymond Fuentes<br>FUENTES AND MCNALLY<br>144 North Brand Blvd.<br>Glendale, CA 91203-2602 | |
| **Hand Service** | Richard Samuel Paz<br>LAW OFFICES OF R. SAMUEL PAZ<br>5711 West Slauson Ave., Suite 100<br>Culver City, CA 90230 | |
| **Hand Service** | Ingrid Justine Grubb<br>Esther Holm<br>Ingrid Justine Grubb<br>LEWIS BRISBOIS BISGAARD SMITH<br>650 Town Center Drive<br>Suite 1400<br>Costa Mesa, CA 92626 | |
| **Hand Service** | Sonia Mercado<br>SONIA MERCADO AND ASSOCIATES<br>5711 West Slauson Ave., Suite 100<br>Culver City, CA 90230 | |
| **Hand Service** | Lindy Bradley<br>Carol Ann Humiston<br>BRADLEY AND GMELICH<br>700 North Brand Blvd., 10th Floor<br>Glendale, CA 91203-1422 | |

**CONTINUED ON NEXT PAGE**

ii

DAVIS WRIGHT TREMAINE LLP<br>865 S. FIGUEROA ST, SUITE 2400<br>LOS ANGELES, CALIFORNIA 90017-2566<br>(213) 633-6800

| Hand Service | Scott Wm. Davenport<br>Angela Marie Powell<br>Summer L. Bridges<br>Mildred K. O'Linn<br>MANNING AND KASS ELLROD<br>    RAMIREZ TRESTER<br>801 South Figueroa Street, 15th Floor<br>Los Angeles, CA 90017 | |

DWT 13627124v1 0050066-000198

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800