Mildred K. O'Linn (State Bar No. 159055)
Angela Powell (State Bar No. 191876)
**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**
801 S. Figueroa St, 15th Floor
Los Angeles, California 90017-3012
Telephone: (213) 624-6900
Facsimile: (213) 624-6999
Email:  mko@manningllp.com; amp@manningllp.com

ESTHER P. HOLM, Esq. (State Bar No. 140279)
I. JUSTINE GRUBB, Esq. (State Bar 254183)
LEWIS BRISBOIS BISGAARD & SMITH LLP
650 Town Center Drive, Suite 1400
Costa Mesa, California 92626
Telephone: 714.545.9200
Facsimile: 714.850.1030
Email:  Esther.Holm@lewisbrisbois.com; Justine.Grubb@lewisbrisbois.com

Attorneys for Defendants, THE CITY OF GARDENA (erroneously named as two separate parties CITY OF GARDENA and GARDENA POLICE DEPARTMENT); CHIEF EDWARD MEDRANO; SGT. CHRISTOPHER CALVIN CUFF; CHRISTOPHER ANTHONY MENDEZ; CHRISTOPHER ANDREW SANDERSON; MATTHEW STEVEN-FONG TODA

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| EUTIQUIO ACEVEDO MENDEZ, *et al.*,<br><br>              Plaintiffs,<br><br>       v.<br><br>THE CITY OF GARDENA, *et al.*,<br><br>              Defendants.<br><br>_____<br><br>AND RELATED CROSS-ACTIONS. | Case No.:CV 13-09042 SVW (AJWx)<br><br>**DEFENDANTS' OPPOSITION TO MOTION TO UNSEAL CONFIDENTIAL INFORMATION FILED UNDER SEAL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:       July 13, 2015<br>Time:      1:30 p.m.<br>Ctrm:     6 |

1  **TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF**
2  **RECORD:**

3       Defendants, CITY OF GARDENA (erroneously named as two separate
4  parties CITY OF GARDENA and GARDENA POLICE DEPARTMENT); CHIEF
5  EDWARD MEDRANO; SGT. CHRISTOPHER CALVIN CUFF; CHRISTOPHER
6  ANTHONY MENDEZ; CHRISTOPHER ANDREW SANDERSON; MATTHEW
7  STEVEN-FONG TODA (collectively "CITY OF GARDENA") hereby submit this
8  Opposition to the Media Organizations' Motion to Unseal Confidential Information
9  Filed Under Seal.  As set forth herein, defendants submit that the Information ó
10 which was subject to multiple protective orders, filed under seal, and settled
11 pursuant to Confidentiality Agreement ó should remain confidential, particularly
12 since the shooting at issue is over two years old and the case is already closed.

13

14 DATED:  June 22, 2015          **MANNING & KASS**
15                               **ELLROD, RAMIREZ, TRESTER LLP**

16                               By:    /s/ Mildred K. O'Linn          .
17                                      Mildred K. O℩Linn

18
19 DATED:   June 22, 2015         **LEWIS BRISBOIS BISGAARD & SMITH**

20                               By:    /s/ Esther P. Holm          .
21                                      Esther P. Holm

22                               Attorneys for Defendants, THE CITY OF
23                               GARDENA (erroneously named as two separate
                                 parties CITY OF GARDENA and GARDENA
24                               POLICE DEPARTMENT);
25                               CHIEF EDWARD MEDRANO; SGT.
                                 CHRISTOPHER CALVIN CUFF;
26                               CHRISTOPHER ANTHONY MENDEZ;
27                               CHRISTOPHER ANDREW SANDERSON;
                                 MATTHEW STEVEN-FONG TODA
28

2

1

2

# **<u>TABLE OF CONTENTS</u>**

1.   INTRODUCTION ..................................................... 6

2.   THIS COURT SHOULD DECLINE TO EXERCISE JURISDICTION OVER THIS STATE-LAW ISSUE AND REMAND THIS MATTER TO STATE COURT FOR THE PROPER APPLICATON OF STATE LAW ...................... 8

3.   THE MEDIA ORGANIZATIONSø MOTION IS UNTIMELY AND SHOULD BE DENIED AS SUCH .................................................. 10

    A.  Factor 1: The Stage of the Proceedings ................................... 12

    B.  Factor 2: The Prejudice to the Existing Parties ......................... 12

    C.  Factor 3: The Reason for the Length of the Delay ................... 13

    D.  Conclusion ............................................................... 14

4.   THE MEDIA ORGANIZATIONS HAVE FAILED TO DEMONSTRATE GOOD CAUSE FOR THIS COURT TO REVERSE ITS PRIOR RULING ON THE CONFIDENTIALITY OF THE VIDEO ................................. 15

5.   PUBLIC POLICY MILITATES IN FAVOR OF MAINTAINING THE CONFIDENTIALITY OF THE VIDEOS ......................................... 17

6.   IF THIS COURT IS INCLINED TO ORDER THE VIDEOS BE RELEASED, A TEMPORARY STAY SHOULD ISSUE TO ALLOW DEFENDANTS AN OPPORTUNITY TO SEEK WRIT RELIEF IN THE COURT OF APPEALS TO MAINTAIN THE CONFIDENTIALITY OF THE VIDEOS ...................... 20

7.   CONCLUSION ............................................................ 22

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

## CASES

*American Civil Liberties Union v. Sup. Ct.,* 236 Cal.App.4th 673 (2015) ...........7, 10

*Barton v. United States District Court,* 410 F.3d 1104 (9th Cir. 2005)..............21, 22

*Blum v. Merrill Lynch Pierce Fenner & Smith,* 712 F.3d 1349 (9th Cir. 2013) .12, 16

*Calvert v. Huckins,* 109 F.3d 636 (9th Cir. 1997)....................................................12

*County of Los Angeles v. Superior Court,* 18 Cal.App.4th 588 (1994) .................6, 9

*Fisher Broad-Seattle TV LLC v. City of Seattle,* 180 Wn.2d 515 (2014) ................17

*Foltz v. State Farm Mutual Auto. Ins. Co.,* 331 F.3d 1122 (9th Cir. 2003) ........15, 16

*Globe Newspaper Co. v. Superior Court,* 457 U.S. 596 (1982)..............................15

*Griffith v. University Hosp., LLC,* 249 F.3d 658 (7th Cir. 2001) ...........................12

*Hagestad v. Tragesser,* 49 F.3d 1430 (9th Cir. 1995)..............................................15

*Haynie v. Superior Court,* 26 Cal.4th 1061 (2001)..................................................17

*In re Perez,* 749 F.3d 849 (9th Cir. 2014) ........................................................21, 22

*In re: The Charlotte Observer v. Bakker,* 882 F.2d 850 (4th Cir. 1989) .................14

*International Union of Mine, Mill & Smelter Works, Local No. 15, et al. v. Eagle-Picher Ming & Smelting Co.,* 325 U.S. 335 (1945) .............................................11

*League of United Latin Am. Citizens v. Wilson,* 131 F.3d 1297 (9th Cir. 1997).12, 13

*New York v. Harris,* 6 Med. L. Rptr. 2108 (N.Y. Co. Ct. 1980) ..............................14

*Nixon v. Warner Communications, Inc.,* 435 U.S. 589 (1978)...........................15, 16

*Oregonian Publishing Co. v. District Court,* 920 F.2d 1462 (9th Cir. 1990) ..........15

*Petrol Stops Northwest v. Continental Oil Co.,* 647 F.2d 1005 (9th Cir. 1981) .......13

*Phillips ex rel. Estates of Byrd v. General Motors,* 307 F.3d 1206 (9th Cir. 2002)..17

*Pintos v. Pacific Creditors Assoc.,* 556 F.3d 1106 (9th Cir. 2009) .........................16

*Rackauckas v. Superior Court,* 104 Cal.App.4th 169 (2002)...................................17

*Rushford v. The New Yorker Magazine,* 846 F.2d 249 (4th Cir. 1988) ....................16

*San Jose Mercury News v . District Court,* 187 F.3d 1096 (9th Cir. 1999)........15, 16

## **TABLE OF AUTHORITIES, cont'd**

*State ex rel. Miller v. Ohio State Hwy. Patrol,* 2014 Ohio 2244 (Ohio 12th Dist. 2014)....................................................................................................17

*Tri-Valley CAREs v. U.S. Dept. of Energy,* 671 F.3d 1113 (9th Cir. 2012).............11

*United States v. British American Tobacco Australia Services Ltd.,* 437 F.3d 1235 (DC Cir. 2006 ..........................................................................................11

*United States v. California Mobile Home Park Mgmt.,* 107 F.3d 1374 (9th Cir. 1997)......................................................................................................11

*United States v. Jefferson County,* 720 F.2d 1511 (11th Cir. 1983).........................12

*United States v. Washington,* 86 F.3d 1499 (9th Cir. 1996)..........................7, 11, 14

*Valley Broad Co. v. District Court,* 798 F.2d 1289 (9th Cir. 1986) .................15, 16

*Williams v. Superior Court,* 5 Cal.4th 337 (1993) ..................................................6, 9

*Yniguez v. State of Arizona,* 99 F.2d 727 (9th Cir. 1991)........................................11


**STATUTES**

California *Government Code* § 6254(f) ..................................................................... 6

Fed. R. Civ. P. 24..................................................................................................11, 16


**OTHER AUTHORITIES**

Local Rule 7-3 ..........................................................................................................11

Schwarzer, Tashima & Wagstaffe, Cal. Prac. Guide: Fed. Civ. Pro. Before Trial (The Rutter Group 2015) (õ*Federal Rutter Guide*ö) .....................................passim

Case No. CV 13-09042 SVW (AJWx)

# MEMORANDUM OF POINTS AND AUTHORITIES

## 1.    INTRODUCTION

This case arises out of an officer-involved shooting that occurred on June 2, 2013.  On December 6, 2013, plaintiffs filed a complaint alleging various state and federal causes of action arising out of this shooting.  Over the course of the next 18 months, the case was aggressively litigated, particularly with respect to the confidentiality of certain documents, photographs and videos of the incident[1] and was the subject to two separate Federal Protective Orders.[2]  Eventually, in an attempt to secure a full and final resolution and obtain closure, the parties agreed to resolve this matter.  A settlement was negotiated reached, which included a provision that the information previously determined to be confidential would remain so.  This provision came at a price.  Finally, on May 18, 2015, nearly two years after the incident, this Court entered an order dismissing all claims and cross-claims and terminating the case.  Docket 245.

Now, Los Angeles Times Communications LLC, The Associate Press, and Bloomberg, LP ("Media Organizations") have brought this motion to intervene in an attempt to unseal confidential information (i.e., three dashboard camera videos).  This motion should be denied for a number of procedural, legal and policy reasons.

First, the California Public Records Act ("CPRA") specifically exempts from disclosure "investigative files" even after the investigation is over.  California *Government Code* § 6254(f); *Williams v. Superior Court,* 5 Cal.4th 337 (1993); *County of Los Angeles v. Superior Court,* 18 Cal.App.4th 588 (1994).  Moreover, recently, the California Courts have been forced to grapple with a similar situation in which a third party sought video information recorded by high-speed automated

---

[1] See Docket Nos. 20, 24, 26-31, 33, 34, 36, 40-42, 44, 46-50, 52, 54, 64-67, 81, 82, 88, 90, 117-120, 126-128, 153, 187-189, 232.

[2] Docket Nos. 44, 125.

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
*ATTORNEYS AT LAW*

license plate readers.  In this case, the California Court of Appeal denied a request to release this information, concluding that the information was privileged pursuant to the CPRA.  *American Civil Liberties Union v. Superior Court,* 236 Cal.App.4th 673 (2015).

The federal issue in this case has been resolved.  What remains is a determination regarding whether the local investigatory information should be turned over to the Media Organizations.  Such a determination – which involves inextricable notions of state law – should be considered by a State Court in the first instance or, at a minimum, be subject to state law on this issue.  Accordingly, defendants submit that this Court should decline to re-open this *closed case* for the purpose of re-visiting a protective order which this Court has already concluded is appropriate under the facts.  If the Media Organizations wish to obtain this information, they should seek it in an appropriate manner in the state courts.

Second, to the extent that this Court is disinclined to either remand this matter to state court or decline to exercise its jurisdiction in the post-judgment dispute, defendants submit that the Media Organizations' motion is *untimely* in that they waited more than 2 years after this officer-involved shooting to file this request and are now attempting to intervene in a closed matter which has been fully and finally resolved.  Any attempt to re-visit this Court's prior rulings which determined that the dash camera videos should remain confidential would be improper given the stage of the proceedings, the prejudice to defendants as a result of the Media Organizations' delay, and the lack of any good cause to justify the delay.  *United States v. Washington,* 86 F.3d 1499, 1502 (9th Cir. 1996); Schwarzer, Tashima & Wagstaffe, Cal. Prac. Guide: Fed. Civ. Pro. Before Trial (The Rutter Group 2015) ("*Federal Rutter Guide*") § 7:186.

Third, any decision by this Court to reverse its prior determination regarding the confidentiality of these documents would send a chilling message that would have a devastating impact in all high-profile litigation, in general, and in civil rights

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

actions against law enforcement agencies, in particular.  Parties in high profile cases will be disinclined to resolve cases at any stage subject to confidentiality provisions for fear that the items in dispute will not remain confidential, no matter how aggressively the issue is litigated.  Additionally, clients who pay a premium to maintain confidentiality will be deprived the benefit of their negotiated bargain.  Finally, and importantly, public agencies will be forced to wrestle with the issue of whether they wish to deploy dashboard cameras and body-worn cameras for fear that this information could be obtained, released in a distorted and sensationalistic manner, and misinterpreted, leading to acts of civil disobedience, damage to property, and the potential loss of life.

Accordingly, for all these reasons, defendants submit that the material previously determined to be confidential by this Court should remain so and that, accordingly, the Motion to Unseal Confidential Information Filed Under Seal be denied.  Additionally, to the extent that this Court is inclined to release the Confidential Information, defendants request that the implementation of any such order be delayed for at least two weeks so that defendants will have an opportunity to seek writ relief from the Ninth Circuit Court of Appeals prior to any such disclosure.

## 2. THIS COURT SHOULD DECLINE TO EXERCISE JURISDICTION OVER THIS STATE-LAW ISSUE AND REMAND THIS MATTER TO STATE COURT FOR THE PROPER APPLICATON OF STATE LAW

Turning to the first issue in this case, defendants submit that this Court should decline to exercise jurisdiction over this state-law issue and, instead, should remand this matter to a state court for the proper application of state law.

As stated above, the California Public Records Act specifically exempts from disclosure criminal õInvestigative Filesö and those may be withheld even after the

1    investigation is over.  *Government Code* § 6254(f); *Williams v. Superior Court*, 5

2    Cal.4th 337 (1993); *County of Los Angeles v. Superior Court*, 18 Cal.App.4th 588

3    (1994).  The dash camera videos here are part of the homicide investigative file and

4    are exempted from public records act disclosures under state law.

5         The process of disclosure of such criminal investigative files in federal

6    litigation is similar to that used in federal civil rights proceedings wherein the

7    otherwise protected and confidential personnel files of peace officers are sought

8    during discovery.  In federal proceedings, the Courts do not specifically adhere to

9    the *Pitchess* process; however, the federal judiciary does provide protection for such

10   records vis a vis federal protective orders similar to those issued here.  After the

11   close of the case, such confidential materials ó including personnel complaints and

12   other supportive documents ó are not subject to disclosure, in part because to do so

13   would usurp state law for no purpose other than arbitrary disclosures of otherwise

14   protected information.  This is analogous to the situation we have here.

15        In this case, this Court has issued multiple protective orders which Media

16   Associates now seek to lift.   Such an action, of course, is within the purview of

17   federal court jurisdiction; however, California state law ó particularly, the CPRA ó

18   specifically deals with such requests *and exempts from disclosure the documents*

19   *requested in this case.*  Given the establishment of an exhaustive state statutory

20   scheme on this issue, the federal court should not supersede the specific California

21   law on this issue.  This Court should defer to the state on the proper application of

22   the CPRA and remand the matter to the state court for the proper resolution of this

23   matter ó particularly since the federal issue has already been resolved and is no

24   longer at issue.

25        Applying this statutory scheme, the California Courts have recently wrestled

26   with an issue regarding the discoverability of video information obtained from high-

27   speed cameras which scanned and catalogued vehicle license plate images to aid law

28   enforcement in locating vehicles associated with a suspected crime.  *American Civil*

*Liberties Union v. Superior Court,* 236 Cal.App.4th 673.  In this case, the California Appellate Court determined that the exemption under CPRA for law enforcement records of investigations applied to this information as the plate scans were precipitated by specific criminal investigations.  *Id.*

This case is extremely persuasive in this instance as it involves California's proper application of the CPRA to requests for information obtained in connection with criminal investigations.  Although the Court acknowledged the public's generalized right of access to information, the Court concluded that such investigatory information was specifically exempted from compelled disclosure under the CPRA.  *Id.* at 679-680.

Finally, defendants note that pursuant to the terms of the Protective Orders which are already in place, all materials which were previously provided to plaintiffs and their agents – including the dash camera videos at issue here – should have already been returned or destroyed.  Any continued possession or dissemination of this information – regardless of the outcome of this motion – would be in violation of this Court's then-existing order and would subject the offending party to serious consequences.

## 3.   THE MEDIA ORGANIZATIONS' MOTION IS UNTIMELY AND SHOULD BE DENIED AS SUCH

To the extent that this Court is disinclined to either remand this matter to state court or decline to exercise its jurisdiction in the post-judgment dispute, defendants submit that the Media Organizations' motion is *untimely* in that they waited more than 2 years after this officer-involved shooting to file this request and are now attempting to intervene in a closed matter which has been fully and finally resolved.  Any attempt to re-visit this Court's prior rulings which determined that the dash camera videos should remain confidential would be improper given the stage of the proceedings, the prejudice to defendants as a result of the Media Organizations'

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

delay, and the lack of any good cause to justify the delay. *United States v. Washington,* 86 F.3d at 1502; Schwarzer, Tashima & Wagstaffe, Cal. Prac. Guide: Fed. Civ. Pro. Before Trial (The Rutter Group 2015) (*Federal Rutter Guide*) § 7:186.[3]

Intervention is the process by which a nonparty takes the initiative and seeks to be added to the lawsuit. FRCP 24. Upon compliance with Rule 24, a nonparty may be permitted to "intervene" in the action and, once doing so, has full party status, including the right to engage in discovery, to participate at trial, and to appeal the judgment. *International Union of Mine, Mill & Smelter Works, Local No. 15, et al. v. Eagle-Picher Ming & Smelting Co.,* 325 U.S. 335, 338 (1945); *United States v. California Mobile Home Park Mgmt. Co.,* 107 F.3d 1374, 1378 (9th Cir. 1997).

Whether intervention is sought as a matter of right or merely as permissive, it can be granted only on a *timely* motion. FRCP 24(a), (b)(1); *United States v. British American Tobacco Australia Services Ltd.,* 437 F.3d 1235, 1238 (DC Cir. 2006). Timeliness is a threshold question addressed to the sound discretion of the Court. *NAACP v. New York,* 413 U.S. 345, 366 (1973); *Yniguez v. State of Arizona,* 99 F.2d 727, 731 (9th Cir. 1991). Relevant factors for determining timeliness include: (1) the stage of the proceedings at the time intervention is sought; (2) prejudice to the existing parties from applicant's delay; and (3) any reason for the length of delay in seeking intervention (how long prospective intervenors knew or reasonably should have known of their interest in the litigation). *United States v. Washington,* 86 F.3d at 1502; *Federal Rutter Guide* § 7:186.

---

[3]  In addition to being untimely, defendants note that the Media Organizations failed to meet and confer in an attempt to resolve this matter informally before filing this motion as required by Local Rule 7-3. Courts have broad discretion in refusing to consider motions which violate the local rules and defendants submit that this Court should exercise this discretion here. *Tri-Valley CAREs v. U.S. Dept. of Energy,* 671 F.3d 1113, 1131 (9th Cir. 2012) ("Denial of motion as a result of failure to comply with local rules is well within a district court's discretion.").

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

## A.     Factor 1: The Stage of the Proceedings

The fact that the district court has already *substantially engaged the issues in the case* (e.g., through pretrial proceedings, injunctions, etc.) weigh heavily against allowing intervention. *League of United Latin American Citizens v. Wilson,* 131 F.3d 1297, 1303 (9th Cir. 1997). Indeed, post-judgment intervention is generally disfavored because it creates delay and prejudice to existing parties and undermines the orderly administration of justice. *Calvert v. Huckins,* 109 F.3d 636, 638 (9th Cir. 1997).

Defendants acknowledge that a third party may seek leave to intervene in an action that has been settled and dismissed in order to challenge court orders made in conjunction with the settlement (e.g., protective orders sealing). *Blum v. Merrill Lynch Pierce Fenner & Smith, Inc.,* 712 F.3d 1349, 1353 (9th Cir. 2013). However, under such circumstances, the Court must consider whether allowing the modification of the confidentiality provisions "can place private litigants in a position they would otherwise reach only after petition of another's discovery." If so, modification is proper *unless it would tangibly prejudice substantial rights of the party opposing modification. Griffith v. University Hosp., LLC,* 249 F.3d 658, 661 (7th Cir. 2001); *Federal Rutter Guide* § 7:190.

In this case, the matter has been fully and finally resolved. Not only have all federal claims been extinguished, all state law claims and all claims contained within the cross-complaint have been fully and finally resolved. As such, the first factor clearly militates in favor of a finding that the Media Organizationsø motion is untimely.

## B.     Factor 2: The Prejudice to the Existing Parties

The second factor considered is any prejudice to the existing parties resulting from the would-be intervenors failure to request intervention earlier. *United States v. Jefferson County,* 720 F.2d 1511, 1517 (11th Cir. 1983); *Federal Rutter Guide* §

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

7:191.  Prejudice might conceivably be shown by loss of evidence, *settlements made in expectation that no further claims would be made,* the necessity of re-opening matters previously adjudicated, or for other reasons.  *Federal Rutter Guide* § 7:191. Some courts consider prejudice to be "the most important factor: in determining timeliness of a motion to intervene.  *Petrol Stops Northwest v. Continental Oil Co.,* 647 F.2d 1005, 1010 (9th Cir. 1981); *Federal Rutter Guide* § 7:191.

In this case, the matter has been fully and finally resolved.  As demonstrated in Footnote 1, the parties thoroughly litigated the issue of the discoverability of the criminal investigatory file and the Court that this information was confidential. ***Defendants relied on this determination.***  Thereafter the parties were able to resolve the matter fully and finally and obtain closure.  This settlement came at a great price to the City of Gardena, which did the right thing to resolve this matter despite great resistance from, and over the objections of, their excess insurance carrier.  As a result, the City of Gardena made an substantial independent contribution to settle this matter ó not because they wanted to õhide something,ö but because it was the right thing to do.  Defendants should be entitled to the benefit of this bargain, particularly since it was obtained at a premium based on their desire to finally resolve this matter and maintain the confidentiality of their criminal investigatory files.

## C.    Factor 3: The Reason for the Length of the Delay

The third factor considered regarding timeliness is basically *why* the party seeking to intervene waited as long as it did.  *League of United Latin American Citizens v. Wilson,* 131 F.3d 1297, 1302 (9th Cir. 1997) ("any substantial length of time weighs heavily against intervention").

In this case, the facts demonstrate that the Media Organizations were immediately aware of the officer-involved shooting and published a number of articles on the issue, the earliest being on June 2, 2013, ***the day of the shooting***.  See

Case No. CV 13-09042 SVW (AJWx)

Manning & Kass
Ellrod, Ramirez, Trester LLP
Attorneys at Law

Docket No. 248 at 41-43.  The Media Organizations sat passively by while the parties engaged in protracted litigation regarding the confidentiality of the items in question.  See Footnote 1, *supra.*  Even when multiple protective orders were issued, the Media Organizations sat by and did nothing.  See Docket Nos. 44, 125.

Tasked with the burden of demonstrating some reason for their delay, the Media Organizations remain silent and have advanced nothing by way of declaration or argument which would attempt to explain their inaction.  This failure is telling.

Various courts have dismissed attempts to assert confidentiality when the information has already been disclosed, likening such a process as "closing the barn door after the horse is gone."  *In re: The Charlotte Observer v. Bakker,* 882 F.2d 850, 855 (4th Cir. 1989) (quoting *New York v. Harris,* 6 Med. L. Rptr. 2108 (N.Y. Co. Ct. 1980).  However, in this case, the opposite is true.  The Media Organizations attempt to *unseal confidential information* on a case that is two years old and which has already been settled is akin to attempting to open the barn door after the horse is already dead.

**D.    Conclusion**

Simply stated, the Media Organizations have utterly failed to address any of the *Washington* factors (i.e., the stage of the proceedings, the prejudice to the parties, and any reason for the length of the delay).  *United States v. Washington,* 86 F.3d at 1502; *Federal Rutter* Guide § 7:186.  Since the district court has substantially engaged in the issues of the case (and, indeed, resolved all issues), defendants relied on these rulings, and the Media Organizations have offered no justification for waiting two years to file this motion, their motion should be denied as untimely.  *United States v. Washington,* 86 F.3d at 1502; *Federal Rutter Guide* § 7:186.

Case No. CV 13-09042 SVW (AJWx)

**4.**   **THE MEDIA ORGANIZATIONS HAVE FAILED TO**
**DEMONSTRATE GOOD CAUSE FOR THIS COURT TO REVERSE**
**ITS PRIOR RULING ON THE CONFIDENTIALITY OF THE VIDEO**

Even if this Court declines to apply state law and considers the Media
Organizations untimely and procedurally-barred claim, the Media Organizations
have failed to demonstrate good cause to revisit this motion.

It is well-settled that the public right of access to civil trials is not absolute.
*Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 606 (1982) (Brennan, J.)
("Although the right of access to . . . trials is of constitutional statute, it is not
absolute.").  Under Ninth Circuit law, the qualified right of public access to attend
civil trials also extends to the trial transcript.  *Foltz v. State Farm Mutual Auto. Ins.
Co.,* 331 F.3d 1122, 1135 (9th Cir. 2003) ("In this circuit, we start with a strong
presumption in favor of access to court records.").  However, this public right of
access to court transcripts is not absolute.  See *Oregonian Publishing Co. v. District
Court,* 920 F.2d 1462, 1465 (9th Cir. 1990).

In addition, the Supreme Court recognizes that the public has "a general right
to inspect and copy public records and documents, including judicial records and
documents."  *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 597 (1978).
This right of access arises out of the fundamental importance of the "public's
understanding of the judicial process and of significant public events."  *Valley
Broad Co. v. District Court,* 798 F.2d 1289, 1294 (9th Cir. 1986).  The common law
right of access to records is distinct from the First Amendment right of access to
courtroom proceedings but arises out of the same principles of judicial openness.
*San Jose Mercury News, Inc. v . District Court,* 187 F.3d 1096, 1102 (9th Cir. 1999)
(the federal common law right of access to records "is not entitled to the same level
of protection accorded a constitutional right"); *Hagestad v. Tragesser,* 49 F.3d 1430,
1434, n. 6 (9th Cir. 1995).  Generally, "there is a strong presumption in favor of the
common law right to inspect and copy judicial records."  *Phoenix Newspapers v.*

1  *U.S. Dist. Court,* 156 F.3d 940, 946 (9th Cir. 1998) (citing *Valley Broadcasting Co.*

2  *v. U.S. Dist. Court,* 798 F.2d 1289, 1294 (9th Cir. 1986).

3        Generally, documents introduced at trial or attached to dispositive motions are

4  afforded a presumption of openness because such documents relate to substantive

5  legal rights and are akin to trials in an open court.  *Foltz v. State Farm Mutual Auto*

6  *Ins. Co.,* 331 F.3d 1122, 1135-1136 (9th Cir. 2003) (citing *Rushford v. The New*

7  *Yorker Magazine,* 846 F.2d 249, 252 (4th Cir. 1988)).  In order to rebut the

8  presumption of openness, the proponent must meet a "compelling reasons" standard

9  that is more stringent than an ordinary "good cause" standard.  *Pintos v. Pacific*

10  *Creditors Assoc.,* 556 F.3d 1106, 1115 (9th Cir. 2009).  Under this test, the court

11  must find that compelling reasons supported by specific factual findings outweigh

12  the competing public interest in disclosure.  *Id.*

13        A nonparty may move for *permissive* intervention under Rule 24(b)(1)(A) for

14  the limited purpose of obtaining discovery (e.g., access to a judicial record under

15  seal).  *San Jose Mercury News, Inc. v. United States Dist. Ct – Northern Dist. (San*

16  *Jose),* 187 F.3d 1096, 1100 (9th Cir. 1999); *Federal Rutter Guide* § 7:248.1.

17  Whether the motion to intervene should be granted depends on whether good cause

18  exists for unsealing the record under Rule 26(c).  *San Jose Mercury News,* 187 F.3d

19  at 1100.

20        Most courts recognize a presumption of public access to court records based

21  on common law and First Amendment (free press) grounds.  The public therefore

22  normally has the right to inspect and copy documents filed with the Court.  See

23  *Nixon v. Warner Comm. Inc.,* 435 U.S. 589, 597 (1978).  However, every court has

24  inherent, supervisory power over its own records and files.  Thus, even where a right

25  of public access exists, access may be denied where the court determines that court-

26  filed documents may be used for *improper purposes*; e.g., "to gratify public spite or

27  promote public scandal: or to circulate libelous statements or release trade secrets.

28  *Nixon,* 435 U.S. at 598.

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP
*ATTORNEYS AT LAW*

1   The public's right of access does *not* apply to documents that were filed under

2   seal pursuant to a valid protective order because the court has already determined

3   that "good cause" exists to protect this information from public disclosure.  *Phillips*

4   *ex rel. Estates of Byrd v. General Motors Corp.,* 307 F.3d 1206, 1213 (9th Cir.

5   2002).

6   Finally, the following cases offer authority re: exemption of police video from

7   the Public Records Act:  *Rackauckas v. Superior Court,* 104 Cal.App.4th 169

8   (2002); *State ex rel. Miller v. Ohio State Hwy. Patrol,* 2014 Ohio 2244 (Ohio 12th

9   Dist. 2014); *Fisher Broad-Seattle TV LLC v. City of Seattle,* 180 Wn.2d 515 (2014);

10  *Haynie v. Superior Court,* 26 Cal.4th 1061 (2001).

11  In this case, this Court has already recognized that the dash camera videos

12  were confidential and has issued appropriate protective orders.  See Docket 44, 125.

13  This issue has been fully and aggressively litigated.  Nothing has changed which

14  supports a reversal of this determination, particularly since the parties relied on the

15  Court's prior order in litigating the case.

16  Indeed, any arguable need to disclose this information has lessened over time.

17  There is nothing which renders this case "more newsworthy" after the passage of

18  two years than it was on the day following the shooting.  Rather, there seems to be

19  no good cause to re-visit an issue which has already been decided.

20

21
22  **5.   PUBLIC POLICY MILITATES IN FAVOR OF MAINTAINING THE**

23       **CONFIDENTIALITY OF THE VIDEOS**

24  In addition to the valid procedural and legal justifications for denying the

25  Media Organizations' motion, public policy militates in favor of maintaining the

26  confidentiality of the videos.  To that end, defendants submit that any decision by

27  this Court to reverse its prior determination regarding the confidentiality of these

28  documents would send a chilling message that would have a devastating impact in

17

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP
*ATTORNEYS AT LAW*

1  all high-profile litigation, in general, and in civil rights actions against law

2  enforcement agencies, in particular.

3      If after lengthy litigation and a negotiated settlement of such issues

4  disclosures of this nature are ordered, parties in high profile cases will be disinclined

5  to resolve cases at any stage subject to confidentiality provisions for fear that the

6  items in dispute will not remain confidential, no matter how aggressively the issue is

7  litigated.  In this case, defendants actively resisted disclosing the dash cam videos

8  during the pendency of the court proceedings for this very reason.  Eventually, when

9  protective orders were hammered out, defendants agreed to produce these videos

10 and other documentary evidence.  Had this information not been subject to a

11 protective order, defendants would not have produced it and would have sought writ

12 relief from the Ninth Circuit Court of Appeals.  The defendants have relied on these

13 orders, and now wholesale after the close of the case, are faced with the same

14 challenge again.  Such an outcome is guaranteed to have wide spread ramifications

15 that interfere with, and will cause extreme prejudice to, all parties.

16     Moreover, as set forth above, defendants paid a premium to settle this case in

17 an attempt to obtain closure and to maintain the confidentiality of the videos so as to

18 ensure public safety.  Simply stated, they are entitled to the benefit of their

19 negotiated bargain, which was obtained through great effort and at great cost.

20     More importantly, in the context of law enforcement cases, it is important to

21 protect the confidentiality of the videos for reasons of public safety.  Over the last

22 few years, a great deal of civil unrest has occurred based on knee-jerk public

23 reactions to incomplete information.  The release of these videos presents a limited

24 picture of the õtotality of the circumstancesö facing the defendants intense and

25 rapidly-evolving circumstances and the split-second decision-making involved.

26     Defendants are reasonably concerned that the Media Organization will not

27 have the ability ó nor the desire ó to present the three different perspectives

28 portrayed in the dash cam videos in their full and complete context.  In fact,

1  defendants are rightly concerned that the Media Organizations will edit any videos

2  which are provided, not so as to tell a fair and balanced story, but rather will choose

3  those brief glimpses and particular angles which are the most provocative in an

4  attempt to spike interest.  Unfortunately, spiking interest is likely to result in death

5  and destruction of lives and property, which in this matter in particular is not in the

6  public interest, particularly in a case where: (1) the District Attorney's Office Justice

7  System Integrity Division has scrutinized the incident and rendered findings; (2) the

8  matter has been subjected to scrutiny of a federal magistrate and a United States

9  District Court federal judge; (3) protective orders have issued based on a showing of

10 good cause; (4) a settlement was negotiated and achieved with a mutually acceptable

11 confidentiality agreement; (5) and the case has been closed.  Now, after the passage

12 of all this time, the healing process that has been achieved should not be reversed

13 simply for the sake of the media's desires.

14      As a result of prior well-publicized incidents, communities such as Fergusson

15 and Baltimore have been pushed to the forefront of the media.  Law enforcement

16 has been forced to respond on a National level to local events based on the skewed,

17 agenda-driven perspective of the media and other pundits.  Officers around the

18 country have been wrongfully accused and banished from their jobs without any real

19 opportunity to defend themselves and zero chance of returning to work.  Here the

20 media wants to re-open a case that has been resolved on multiple levels where the

21 parties have achieved resolution and the matter has been closed.  Defendants submit

22 that a decision to re-visit the confidentiality of the dash cam videos could result in

23 their misinterpretation, leading to acts of civil disobedience, damage to property,

24 and the potential loss of life.

25      There is a very real concern that if the dash camera videos are released at this

26 juncture, there will be a "rush to judgment" against the officers.  In other situations

27 around the country, law enforcement officers have found themselves

28 administratively suspended or even fired as a result of the public outcry following

1 the release of such information.  Even where officers are subsequently exonerated

2 by prosecuting agencies or their own departments ó as the involved-officers have

3 been in this case ó the aftermath can often lead to the ruination of careers based

4 solely on political motives.

5       Finally, as communities are grappling with issues of law enforcement use of

6 force, a number of solutions have been discussed.  One of the chief "solutions" has

7 been the implementation of body worn cameras ("BWC") by officers.  However, as

8 state and local municipalities are grappling with this issue, an order providing that

9 such information *must* be turned over to the various Media Organizations, regardless

10 of the number of protective orders and filings under seals which are in place, would

11 have a chilling effect on this proposed roll-out.  Law enforcement agencies will have

12 to consider whether they wish to waive all rights to privacy and unfettered media

13 access if such cameras are implemented.

14       Consequently, as discussed above, the public policy considerations in this

15 case are many, not simply the generalized right of public access.  Accordingly, any

16 decision to reveal such confidential information should be approached cautiously

17 and subject to a careful balancing analysis, heavily weighted in favor of public

18 safety.

19

20 **6.   IF THIS COURT IS INCLINED TO ORDER THE VIDEOS BE**

21      **RELEASED, A TEMPORARY STAY SHOULD ISSUE TO ALLOW**

22      **DEFENDANTS AN OPPORTUNITY TO SEEK WRIT RELIEF IN**

23      **THE COURT OF APPEALS TO MAINTAIN THE**

24      **CONFIDENTIALITY OF THE VIDEOS**

25       Finally, this issue warrants further comment, assuming *arguendo* that this

26 Court is inclined to release the Confidential Information.  Accordingly, if the Court

27 grants the request of the Media Organizations, defendants request that the

28

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP
*Attorneys at Law*

1  implementation of any such order be delayed for at least two weeks so that

2  defendants will have an opportunity to seek writ relief from the Ninth Circuit Court

3  of Appeals prior to any such disclosure.  *In re Perez,* 749 F.3d 849, 854-855 (9th

4  Cir. 2014) (party may suffer irreparable harm if erroneously required to disclose

5  privileged information); *Barton v. United States Dist. Court for Central Dist. of*

6  *Calif.,* 410 F.3d 1104, 1108-1109 (9th Cir. 2005).

7      As indicated by the amicus briefing in this matter, this is an issue of extreme

8  importance to the law enforcement community.  Further direction from the Court of

9  Appeal should occur prior to the issuance of any order compelling the disclosure of

10 dash cam videos which was previously determined to be confidential.

11     Accordingly, if this Court is inclined to re-visit its prior ruling and release the

12 confidential information, defendants request that the implementation of any such

13 order be delayed for at least two weeks so that defendants will have an opportunity

14 to seek writ relief from the Ninth Circuit Court of Appeals prior to any such

15 disclosure. *In re Perez,* 749 F.3d at 854-855; *Barton v. United States Dist. Court for*

16 *Central Dist. of Calif.,* 410 F.3d at 1108-1109.

17 / / /

18 / / /

19 / / /

20 / / /

21 / / /

22 / / /

23 / / /

24 / / /

25 / / /

26 / / /

27 / / /

28 / / /

**7.    CONCLUSION**

As set forth herein, defendants submit that the Information ó which was subject to multiple protective orders, filed under seal, and settled pursuant to a Confidentiality Agreement ó should remain confidential, particularly since the shooting at issue is over three years old and the case is already closed.  Additionally, if this Court is inclined to re-visit its prior ruling and release the confidential information, defendants request that the implementation of any such order be delayed for at least two weeks so that defendants will have an opportunity to seek writ relief from the Ninth Circuit Court of Appeals prior to any such disclosure.  *In re Perez,* 749 F.3d at 854-855; *Barton v. United States Dist. Court for Central Dist. of Calif.,* 410 F.3d at 1108-1109.

DATED:  June 22, 2015          **MANNING & KASS**
                                                 **ELLROD, RAMIREZ, TRESTER LLP**


                                                 By:   */s/ Mildred K. O'Linn*          .
                                                        Mildred K. O'Linn


DATED:   June 22, 2015         **LEWIS BRISBOIS BISGAARD & SMITH**


                                                 By:   */s/ Esther P. Holm*          .
                                                        Esther P. Holm

                                                 Attorneys for Defendants, THE CITY OF GARDENA (erroneously named as two separate parties CITY OF GARDENA and GARDENA POLICE DEPARTMENT); CHIEF EDWARD MEDRANO; SGT. CHRISTOPHER CALVIN CUFF; CHRISTOPHER ANTHONY MENDEZ; CHRISTOPHER ANDREW SANDERSON; MATTHEW STEVEN-FONG TODA