1   PETER BIBRING (SBN 223981)
    pbibring@aclusocal.org
2   CATHERINE A. WAGNER (SBN 302244)
    cwagner@acluscoal.org
3   ACLU FOUNDATION OF SOUTHERN CALIFORNIA
    1313 West Eighth Street
4   Los Angeles, California 90017
    Telephone: (213) 977-9500
5   Facsimile: (213) 977-5299

```
FILED
CLERK, U.S. DISTRICT COURT

JUL - 8 2015

CENTRAL DISTRICT OF CALIFORNIA
BY                         DEPUTY
```

6   Attorney for Proposed Amicus ACLU of Southern California

7

8

9   **UNITED STATES DISTRICT COURT**

10   **CENTRAL DISTRICT OF CALIFORNIA**

11

12

13   EUTIQUIO ACEVEDO MENDEZ,          ) Case No. 2:13-CV-9042 SVW (AJWx)
                                        )
14            Plaintiff,                ) **APPLICATION OF ACLU OF**
                                        ) **SOUTHERN CALIFORNIA TO FILE**
15       v.                             ) **BRIEF OF AMICUS CURIAE;**
                                        ) **PROPOSED BRIEF**
16   THE CITY OF GARDENA, et al.,       )
                                        ) Hearing Date:     July 13, 2015
17            Defendants.               ) Time:             1:30 p.m.
                                        ) Courtroom:        6
18                                      )
                                        )
19                                      )
                                        )
20                                      )
                                        )
21                                      )
                                        )
22                                      )

23

24

25

26

27

28

## APPLICATION FOR LEAVE TO FILE AMICUS CURIAE BRIEF

The American Civil Liberties Union of Southern California ("ACLU SoCal") respectfully requests leave to file the attached brief of Amicus Curiae in support of Intervenors Los Angeles Times Communications LLC, The Associated Press, and Bloomberg, L.P., to assist this Court in resolving the important issue of law presented in this matter, specifically, whether the public is entitled to basic information necessary for law enforcement oversight and accountability: video evidence of a fatal police shooting, submitted by both parties in connection with a summary judgment motion, in a case that the Defendants ultimately settled by paying millions in taxpayer dollars.

The interests of Proposed Amicus are set forth in the attached proposed brief, *infra* Part II. Because this case presents important questions about police accountability and public access to information about the operation of police officers, and the proper balance between accountability and privacy, proper resolution of the matter is of significant concern to amicus and its members.

Proposed Amicus believes its experience in the legal issues surrounding the disclosure of information on governments, and police in particular, as well as in the repercussions for decisions on governance of police and police-community relations, will make this brief of service to the Court.

Therefore, based upon all of the foregoing, Proposed Amicus respectfully requests leave from the Presiding Judge to file the attached brief of Amicus Curiae addressing the above issues, to aid this Court in its consideration and determination of the critical issues before it in this matter.

Dated: July 7, 2015

Respectfully submitted,

ACLU FOUNDATION OF
SOUTHERN CALIFORNIA

By: _____

Attorney for Proposed Amicus Curiae

1

# TABLE OF CONTENTS

2

3  APPLICATION FOR LEAVE TO FILE AMICUS CURIAE BRIEF.................1

4  TABLE OF AUTHORITIES.....................................................................ii

5  BRIEF OF AMICUS CURIAE.................................................................1

6  I.    Introduction.................................................................................1

7  II.   Statement of Identity and Interests of Amicus Curiae.........................1

8  III.  Argument....................................................................................2

9        a. *Amicus Agrees With Intervenors' Arguments that the Court Records,*

10          *Including the Video Exhibits, Must be Unsealed*............................2

11       b. *Privacy Arguments Do Not Justify Withholding the Videos, Especially in*

12          *the Context of Civil Rights Litigation*........................................3

13       c. *The Public Interest in Videos of Police Conduct, Especially Those That*

14          *Shed Light on Uses of Deadly Force, Such as These, is Great*.............7

15  IV.   CONCLUSION.............................................................................10

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*CBS, Inc. v. Block,*
    42 Cal. 3d 646 (1986) ...................................................................................8

*Foltz v. State Farm Mut. Auto. Ins. Co.,*
    331 F.3d 1122 (9th Cir. 2003) .......................................................................3

*Glik v. Cunniffe,*
    655 F.3d 78 (1st Cir. 2011) ...........................................................................6

*Long Beach Police Officers Ass'n. v. City of Long Beach,*
    59 Cal. 4th 59 (2014) ....................................................................................6

*Marylander v. Superior Court,*
    81 Cal. App. 4th 1119 (2000) .......................................................................7

*Richmond Newspapers, Inc. v. Virginia,*
    448 U.S. 555 (1980) ......................................................................................3

*Shepherd v. Superior Court,*
    17 Cal. 3d 107 (1976) ...................................................................................7

*Speaker v. Cnty. of San Bernardino,*
    82 F. Supp. 2d 1105 (C.D. Cal. 2000) .........................................................6

## Statutes

California Public Records Act .............................................................................7

Public Records Act under Cal. Gov't. Code § 6254(f) .......................................6

Federal Rules of Appellate Procedure Rule 29(c)(5) .........................................2

## Other Authorities

DOJ Findings Letter re Miami Police Department (July 9, 2013),
    http://www.justice.gov/crt/about/spl/documents/miami_findings_7-
    9-13.pdf (last visited March 24, 2015) .........................................................9

DOJ Findings Letter re Cleveland Division of Police (Dec. 4, 2014),
http://www.justice.gov/sites/default/files/opa/press-
releases/attachments/2014/12/04/cleveland_division_of_police_fin
dings_letter.pdf (last visited March 24, 2015) ........................................9

First Amendment ...................................................................................1, 2, 6

Hector Villagra, *ACLU SoCal releases statement on LAPD's policy on
body worn video cameras*, ACLU (April 24, 2015),
https://www.aclusocal.org/statement-lapd-policy-bodycam ................................4

Hector Villagra, *ACLU SoCal releases statement on body cameras
and police*, ACLU (Dec. 16, 2014),
https://www.aclusocal.org/aclu-socal-releases-statement-body-
cameras-police/ ........................................................................................4

Jay Stanley, *Police Body-Mounted Cameras: With Right Policies in
Place, a Win For All, Version 2.0*, ACLU 8 (March 2015),
https://www.aclu.org/sites/default/files/assets/police_body-
mounted_cameras-v2.pdf ...........................................................................5

Jay Stanley, *Police Body-Mounted Cameras: With Right Policies in
Place, a Win For All*, ACLU (updated March 2015),
https://www.aclu.org/police-body-mounted-cameras-right-policies-
place-win-all ............................................................................................4

Jay Stanley, *Police Body-Mounted Cameras: With Right Policies in
Place, a Win For All*, ACLU 5 (Oct. 2013),
https://www.aclu.org/files/assets/police_body-
mounted_cameras.pdf..............................................................................5

Merrick Bobb, Civilian Oversight of the Police in the United States,
22 St. Louis U. Pub. L. Rev. 151, 158 (2003)........................................9

Report of the Independent Commission on the Los Angeles Police
Department, 178 (1991)............................................................................9

U.S. Constitution...........................................................................................2

# BRIEF OF AMICUS CURIAE

## I.    Introduction

The issue before this Court is whether, in the context of a civil rights lawsuit challenging the legality of a fatal shooting by sheriff's deputies of two unarmed men, the Court should properly keep under seal video recordings of the shooting at issue filed in connection with a motion for summary judgment, despite the objection of both media groups who seek access to the recordings to report on police conduct and the plaintiff, who wants the videos released and the video of the shootings made public.

Amicus American Civil Liberties Union of Southern California ("ACLU SoCal") joins the arguments put forth by Intervenors Los Angeles Times and other media organizations, who have moved to have the videos unsealed, and agrees with their conclusion that the videos must be released immediately. Amicus writes separately to emphasize the importance of public access to video evidence of critical incidents such as officer-involved shootings, and to correct the suggestion by Amicus Los Angeles County Police Chiefs' Association that the ACLU's position on the release of footage from body cameras supports the sealing of the videos at issue here.

## II.    Statement of Identity and Interests of Amicus Curiae

Amicus ACLU SoCal—an affiliate of the American Civil Liberties Union ("ACLU")—is a nonprofit, nonpartisan civil liberties organization with more than 25,000 members and supporters dedicated to the principles of liberty and equality embodied the United States Constitution and our nation's civil rights law. Since their founding, both the national ACLU and ACLU SoCal have had an abiding interest in the promotion of the guarantees of liberty and individual rights embodied in the Constitution, including the freedom of speech and freedom of the press guaranteed by the First Amendment, and public access to court proceedings. The ACLU has also been committed to transparent and open operation of

1 | government in general, and police departments in particular.

2 |      ACLU SoCal has litigated a number of cases and legislative campaigns

3 | involving the balance between the open, transparent and accountable operation of

4 | police departments and the privacy rights of individuals as well as police officers.

5 | Because this case presents important questions about police accountability and

6 | public access to information about the operation of law enforcement, and the

7 | proper balance between public accountability and privacy, proper resolution of the

8 | matter is of significant concern to Amicus and its members.

9 |      Because of ACLU SoCal's longstanding commitment to these issues, it has

10 | developed experience both in the legal issues surrounding the disclosure of

11 | information on governments, and police in particular, and in the repercussions for

12 | decisions on governance of police and police-community relations. Amicus

13 | believes its experience in these issues will make this brief of service to the Court.[1]

14 | **III.   Argument**

15 |      *a. Amicus Agrees With Intervenors' Arguments that the Court Records,*

16 |      *Including the Video Exhibits, Must be Unsealed*

17 |      Under the First Amendment to the U.S. Constitution and federal common

18 | law, the public has a presumptive right of access to evidence submitted in

19 | connection with dispositive motions, including summary judgment motions, which

20 | can be overcome only by a showing of a compelling interest in sealing the record,

---

[1] While the Federal Rules of Civil Procedure do not specifically address requirements for amicus briefs, Amicus sets forth the information required by Rule 29(c)(5) of the Federal Rules of Appellate Procedure regarding authorship and support of this brief. Accordingly: (A) no party's counsel authored this brief in whole or in part; (B) no party or party's counsel contributed money to fund the preparation or submission of this brief; and (C) no person other than Proposed Amicus Curiae and their counsel contributed money to fund the preparation or submission of this brief. R. Samuel Paz, counsel for plaintiff Mendez, on the board of directors of the ACLU of Southern California, and has provided financial contributions to support the ACLU's work in the past, but contributed no money specifically to fund the preparation of this brief.

1  a substantial probability that the interest will be prejudiced without sealing, and a

2  showing that any sealing of the record is narrowly tailored to the interested to be

3  protected and that no less restrictive means exists to protect the interest. *See, e.g.,*

4  *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135-36 (9th Cir. 2003);

5  *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980). Amicus agrees with

6  the sound and thorough legal analysis applied by Intervenors Los Angeles Times,

7  et al. in their brief in support of their Motion to Intervene for the Limited Purpose

8  of Unsealing Summary Judgment Video Exhibits. Without repeating that analysis

9  here, Amicus emphasizes its agreement with the arguments put forth by the

10  Intervenors, and with the clear conclusion that, under existing law, the court

11  records, including the videos, must be unsealed immediately.

12  ### b. *Privacy Arguments Do Not Justify Withholding the Videos, Especially*
13  ### *in the Context of Civil Rights Litigation*

14  In their briefs, Defendants and Amicus Los Angeles County Police Chiefs'

15  Association ("LACPCA") suggest that the well-established public right of access

16  to the videos of the police shooting at issue, and the extraordinary public interest in

17  the conduct revealed by those videos, may be outweighed in part by privacy

18  concerns. Defendant's Opp., Dkt. No. 250, at 20; LACPCA Br., Dkt. No. 251, at 5-

19  9. Amicus LACPCA goes so far as to cite ACLU publications in support of its

20  position. Dkt. No. 251 at 9 n.2. These references misrepresent the ACLU's position

21  on public access to video of police incidents and completely fail to balance privacy

22  concerns with the extraordinary public interest in transparency of police use of

23  deadly force.

24  The ACLU has long been concerned about intrusions into privacy by the

25  government and has raised concerns about the implications of police body cameras

26  for privacy of both officers and civilians. Because, all too often, members of the

27  public only interact with police during difficult circumstances, police body

28  cameras will inevitably capture sensitive footage of victims of crimes, witnesses or

1   even suspects in traumatic or sensitive situations and may capture such footage in

2   private places such as homes or offices when police have authority to enter.  For

3   incidents where there are privacy concerns and no allegations of misconduct, the

4   public should not have to worry that every encounter with law enforcement will

5   wind up on the evening news or the internet.[2]  The ACLU has therefore

6   recommended that, where there is no reason to believe misconduct or a significant

7   incident such as a use of force have occurred, and where the civilian subjects of

8   video do not want the video made public, police body camera footage should not

9   be disclosed to the general public.[3]

10        Because we give police tremendous authority, however, the public has a

11   correspondingly strong interest in knowing how police use that authority,

12   particularly in critical incidents such as shootings or where there are allegations of

13   misconduct.  First-hand evidence of police actions, like the video in question here,

14   directly illuminates how police operate, helps identify misconduct by individual

15   officers and poor policies or training by agencies, and allows the public to hold

16   civic leaders accountable for problems.

17        The ACLU has therefore identified a number of circumstances under which

18   it takes the position that public interest in disclosure of video of police action

19   substantially outweighs privacy concerns, and police-recorded footage should be

20   made public.  All of these circumstances are present here:

21        First, in the context of critical incidents such as officer-involved shootings,

22   the public interest in law enforcement accountability and transparency outweigh

23   the privacy interests of the individual subjects of the video.[4]  The public gives few

---

24   [2] *See, e.g.,* Jay Stanley, *Police Body-Mounted Cameras: With Right Policies in*
25   *Place, a Win For All*, ACLU (updated March 2015), available at
26   https://www.aclu.org/police-body-mounted-cameras-right-policies-place-win-all.
     [3] See Declaration of Peter Bibring, Exhibit
27   [4] *See* Hector Villagra, *ACLU SoCal releases statement on LAPD's policy on body*
28   *worn video cameras*, ACLU (April 24, 2015), *available at*

1   government officials as much authority as the power we give to police to take
2   human life based on split-second judgments.  The public has a correspondingly
3   strong interest in understanding how the police exercise that authority.  Because
4   this case involves the exercise of that ultimate authority, the use of deadly force,
5   the video evidence of officers' actions should be public.

6        Second, when the subject of a police encounter makes a complaint alleging
7   official misconduct, the same strong public interest arises in identifying police
8   misconduct, poor policies, or poor oversight. Where there is a complaint or other
9   evidence of police misconduct — absent a request by the complainant, and strong
10  reasons, for confidentiality— the ACLU has argued that those interests overcome
11  the individual's privacy interests and justify public disclosure.[5]  Here, again, by the
12  filing of this case, Plaintiffs have unquestionably raised serious concerns about
13  misconduct that, the ACLU submits, would justify release of the video even had it
14  not involved a fatal shooting and even had it not been part of a court record.

15       Third, when the subject of the video seeks its release, there are no privacy
16  concerns.[6]  While this case might be harder if the public interest in disclosure were
17  pitted against the Plaintiffs' desire not to have video of the violent shooting — and

18  _____

19  https://www.aclusocal.org/statement-lapd-policy-bodycam; Hector Villagra, *ACLU*
    *SoCal releases statement on body cameras and police*, ACLU (Dec. 16, 2014),
20  *available at* https://www.aclusocal.org/aclu-socal-releases-statement-body-
    cameras-police/.
21
    [5] *See* Jay Stanley, *Police Body-Mounted Cameras: With Right Policies in Place, a*
22  *Win For All, Version 2.0*, ACLU 8 (March 2015), *available at*
23  https://www.aclu.org/sites/default/files/assets/police_body-mounted_cameras-
    v2.pdf (recordings that are "flagged" as a result of, *inter alia*, complaints of
24  misconduct "should be publicly discloseable, because in such cases the need
25  for oversight generally outweighs the privacy interests at stake").
    [6] Even the ACLU paper cited by Amicus LACPCA makes this clear. *See* Jay
26  Stanley, *Police Body-Mounted Cameras: With Right Policies in Place, a Win For*
27  *All*, ACLU 5 (Oct. 2013), *available at*
    https://www.aclu.org/files/assets/police_body-mounted_cameras.pdf ("Public
28  disclosure of any recording should be allowed with the consent of the subjects").

1  death of Mr. Diaz-Zeferino — made public, here Plaintiffs themselves support

2  disclosure of the videos.  Given that the subject of videos (and the family of

3  decedent Diaz-Zeferino) not just consent to but support disclosure, law

4  enforcement amici's concern for privacy rings false. Neither defendants nor amici

5  have identified any third parties captured on video who have privacy interests, and

6  the deputies involved do not have privacy rights in the public discharge of their

7  duties and on-duty interactions with members of the public in a public place. *See,*

8  *e.g., Glik v. Cunniffe*, 655 F.3d 78, 82–85 (1st Cir. 2011) ("[A] citizen's right to

9  film government officials, including law enforcement officers, in the discharge of

10  their duties in a public space is a basic, vital, and well-established liberty

11  safeguarded by the First Amendment."); *Long Beach Police Officers Assn. v. City*

12  *of Long Beach*, 59 Cal. 4th 59, 74 (2014) (personal privacy interests of officers

13  involved in shootings did not justify withholding their names); *see also* Intervenors

14  Br. at 16-18.

15       The ACLU has advocated for these standards in the context of disclosure of

16  body camera video in response to public records requests, which makes the law

17  enforcement amici's claim that the ACLU supports their argument for non-

18  disclosure disingenuous.  When the disclosure concerns not merely a request for

19  public records, but evidence submitted on summary judgment in a federal civil

20  rights case, the public's interest in access to and the transparency of the judicial

21  system is also at issue and sets a significantly higher burden for secrecy. *See*

22  Intervenors Br. at 8-10. Because the records at issue involve the use of deadly

23  force by police, allegations of police misconduct, and the consent of Plaintiffs to

24  their release, privacy concerns cannot justify keeping the videos sealed.[7]

25  _____

26  [7] Amici California State Sheriffs' Association, California Police Chiefs'
    Association and the California Peace Officers' Association, in their brief, put forth

27  the separate argument that the videos should remain sealed on the grounds that

28  they constitute "records of … investigations" that are exempt from the disclosure

1      ### c. *The Public Interest in Videos of Police Conduct, Especially Those That Shed Light on Uses of Deadly Force, Such as These, is Great*

2

3      While Amicus endorses the entirety of Intervenors' brief, the ACLU

4      particularly emphasizes its agreement with Intervenors' discussion of the

5      "profound public interest in access to the videos that show the events surrounding

6      the police shooting of an unarmed man." Intervenors Br. at 20, *see also id.* at 20–

7      22. The presumption of public access to court records, including evidence

8      connected with dispositive motions, is grounded in principles of democratic

9      governance. Law enforcement's accountability to the public depends on the

10     public's access to information on police conduct. It is only through an informed

11     understanding of how their government systems operate, and how government

12     officials conduct themselves, that the people are able to judge whether those

13     systems and individuals are conducting their business faithfully. And it is only

14     through knowledge of specific incidents that the people may hold their officers

15     accountable for the results of poor policies or bad judgment, and deter similar

16     mistakes in the future. The government's law enforcement function is not immune

17

18     requirements of the Public Records Act under Cal. Gov't. Code § 6254(f). *See* Dkt.

19     No. 252 at 2-9. This argument is utterly inapposite. First, in federal question cases, questions of privilege are governed by federal law, now state law. *Speaker v. Cnty.*

20     *of San Bernardino,* 82 F. Supp. 2d 1105, 1108-09 (C.D. Cal. 2000). Second, even

21     under California law, PRA exemptions are irrelevant in the context of litigation, including determinations as to whether court records must remain sealed. *See* Gov.

22     Code. § 6260 ("The provisions of this chapter shall not be deemed in any manner

23     to affect the status of judicial records as it existed immediately prior to the effective date of this section, nor to affect the rights of litigants"); *Marylander v.*

24     *Superior Court,* 81 Cal. App. 4th 1119, 1124-25, 1126 n.1 (2000) (explaining that

25     PRA exemptions do not function as litigation privileges or affect discovery rights); *Shepherd v. Superior Court,* 17 Cal. 3d 107, 123-24 (1976) ("It is manifest,

26     however that the effect of section 6254 is limited to 'this chapter' (i.e. the

27     California Public Records Act, dealing with public inspection of certain governmental documents) and has no application to any procedure not under that

28     act.").

7

1  from this basic precept of transparency. Disclosure of information about the

2  actions and operations of police is vital to maintaining responsible, accountable

3  police departments.

4       Judicial authorities have long and consistently recognized the necessity of

5  public disclosure to accountability in government. As the California Supreme

6  Court has explained,

7

8       Implicit in the democratic process is the notion that
     government should be accountable for its actions. In order

9       to verify accountability, individuals must have access to
     government files. Such access permits checks against the

10       arbitrary exercise of official power and secrecy in the

11       political process.

12

13  *CBS, Inc. v. Block*, 42 Cal. 3d 646, 651 (1986). That court has emphasized that the

14  need for such access is especially powerful when the information pertains to the

15  conduct of law enforcement, given the extraordinary authority with which police

16  are entrusted. In *Comm'n on Peace Officer Standards & Training v. Superior*

17  *Court*, the state Supreme Court observed,

18       The public's legitimate interest in the identity and

19       activities of police officers is even greater than its interest
     in those of the average public servant. Law enforcement

20       officers carry upon their shoulders the cloak of authority

21       to enforce the laws of the state. In order to maintain trust
     in its police department, the public must be kept fully

22       informed of the activities of its peace officers. ... The

23       abuse of a patrolman's office can have great potentiality
     for social harm.

24

25  42 Cal. 4th 278, 297-98 (2007) (quotations omitted).

26       In the context of police use of deadly force, the importance of public access

27  to information on law enforcement operations is particularly acute. Independent

28  experts have recognized the importance of public access to information on how

8

1  police approach uses of deadly force and emphasize the role that disclosure of such

2  information plays in police reform efforts and in the relationship between the public

3  and police. Indeed, one of the core recommendations of the Christopher

4  Commission, which examined the Los Angeles Police Department in the aftermath

5  of the Rodney King beating and the resulting riots, was to achieve public

6  accountability through published reports by the department's civilian overseers.

7  Report of the Independent Commission on the Los Angeles Police Department, 178

8  (1991). *See also* Merrick Bobb, *Civilian Oversight of the Police in the United States*,

9  22 St. Louis U. Pub. L. Rev. 151, 158 (2003) ("There is increasingly broad

10  agreement that whether or not the police retain the power to investigate themselves,

11  law enforcement's business, in general, is the public's business, and therefore must

12  be an open and transparent process.").

13       In a number of recent investigations, the U.S. Department of Justice ("DOJ")

14  has highlighted the importance of public scrutiny of how police approach uses of

15  deadly force. For example, in its letter about the Miami Police Department, it found

16  not only that "substantive deficiencies in deadly force investigations" "led to a

17  heightened risk that MPD officers would use force, including deadly force,

18  excessively," but also that "the significant decrease in the number of shootings in

19  2012 while under increased public scrutiny indicates that MPD may be capable of

20  addressing this problem, [and] underscores that the previous spike in officer-

21  involved shootings may have been avoidable." DOJ Findings Letter re Miami Police

22  Department, at 1, 3, 5 (July 9, 2013).[8] *See also* DOJ Findings Letter re Cleveland

23  Division of Police, at 46 (Dec. 4, 2014) (observing that "officers believe that high

24  publicity events are treated differently in terms of discipline by CDP than uses of

25

26

---

27  [8] *Available at* http://www.justice.gov/crt/about/spl/documents/miami_findings_7-9-

28  13.pdf (last visited March 24, 2015).

1  force that no one is watching.").[9]

2  **IV. Conclusion**

3      This profound public interest in access to videos showing the controversial

4  police killing at issue in this case cannot be overcome by any interest offered by

5  Defendants.  Amicus ACLU of Southern California respectfully requests that this

6  Court unseal the videos in question.

7

8  Dated:        July 7, 2015                    Respectfully Submitted,

9                                               ACLU FOUNDATION OF
                                                 SOUTHERN CALIFORNIA

10

11                                               By: _____

12                                                   PETER BIBRING

13                                                   Attorney for Proposed Amicus Curiae

14

15

16

17

18

19

20

21

22

23

24

25

26

27  [9] *Available at* http://www.justice.gov/sites/default/files/opa/press-
    releases/attachments/2014/12/04/cleveland_division_of_police_findings_letter.pdf (last
28  visited March 24, 2015).

10

1

## PROOF OF SERVICE

2       I am employed in the County of Los Angeles, State of California. I am over
the age of 18 and not a party to the within action. My business address is ACLU of
3  Southern California, 1313 West 8th Street, Los Angeles, CA 90017.

4       On July 8, 2015, I caused to be served through mail (USPS) and/or hand-
served (through Nationwide Legal LLC, 1609 James M Wood Blvd, Los Angeles,
5  CA 90015) the foregoing document described as:

6    **APPLICATION OF ACLU OF SOUTHERN CALIFORNIA TO FILE BRIEF OF
AMICUS CURIAE; PROPOSED BRIEF**
7

8  on each person on the attached Service List.

9       Executed on July 8, 2015, at Los Angeles, California.

10      I declare under penalty of perjury under the laws of the United States of
America that the foregoing is true and correct and that I am employed in the office
11  of a member of the bar of this Court at whose direction the service was made.

12

13      Diana Gonzalez

           Print Name                    Signature
14

15                   **Service List**

16

| Service Type | Counsel Served | Party |
|---|---|---|
| Email & Mail | **Mark R Pachowicz**<br>**Kathleen Leslie Crouch**<br>Law Offices of Mark Pachowicz APLC<br>771 East Daily Drive Suite 230<br>Camarillo, CA 93010<br>805-987-4975<br>Fax: 805-987-7680<br>Email: kat@pachowicz.com;<br>mark@pachowicz.com | **Plaintiff** Eutiquio Acevedo Mendez; Jose Amado; Estate Ricardo Diaz Zeferino *(by and through Juan Jesus Diaz and Bonifacia M. Zeferino)* |
| Email & Mail | **Richard Samuel Paz**<br>Law Offices of R Samuel Paz<br>5711 West Slauson Avenue Suite 100<br>Culver City, CA 90230<br>310-410-2981<br>Fax: 310-410-2957<br>Email: samuelpaz@msn.com | **Plaintiff** Eutiquio Acevedo Mendez; Jose Amado |

11

| Email & Mail | **Sonia M Mercado**<br>Sonia Mercado and Associates<br>5711 West Slauson Avenue Suite 100<br>Culver City, CA 90230<br>310-410-2981<br>Fax: 310-410-2957<br>Email: soniamer2002@yahoo.com | **Plaintiff** Estate Ricardo Diaz Zeferino *(by and through Juan Jesus Diaz and Bonifacia M. Zeferino)* |
|---|---|---|
| Hand service | **Esther P Holm**<br>**Ingrid Justine Grubb**<br>Lewis Brisbois Bisgaard and Smith LLP<br>650 Town Center Drive Suite 1400<br>Costa Mesa, CA 92626-1925<br>714-545-9200<br>Fax: 714 850 1030<br>Email: holm@lbbslaw.com;<br>jgrubb@lbbslaw.com | **Defendant**<br>The City of Gardena<br>*Erroneously Sued As*<br>The City of Gardena; The Gardena Police Department<br>*Erroneously Sued As*<br>The City of Gardena; Chief Edward Medrano; Sgt Christopher Calvin Cuff; Christopher Anthony Mendez; Christopher Andrew Sanderson; Matthew Steven-Fong; Cross Claimant Sgt Christopher Calvin Cuff; Cross Claimant Matthew Steven-Fong; Cross Claimant The Gardena Police Department; Cross Claimant Chief Edward Medrano; Cross Claimant Christopher Anthony Mendez; Cross Claimant The City of Gardena; Cross Claimant Christopher Andrew Sanderson |
| Hand service | **Mildred K O'Linn**<br>**Scott Wm. Davenport**<br>**Angela Marie Powell**<br>**Summer L Bridges**<br>Manning and Kass Ellrod Ramirez Trester LLP<br>801 Tower<br>801 South Figueroa Street, 15th Floor<br>Los Angeles, CA 90017<br>213-624-6900<br>Fax: 213-624-6999<br>Email: mko@manningllp.com;<br>swd@manningllp.com;<br>amp@manningllp.com; slb@manningllp.com | **Defendant**<br>The City of Gardena<br>*Erroneously Sued As*<br>The City of Gardena; The Gardena Police Department<br>*Erroneously Sued As*<br>The City of Gardena; Chief Edward Medrano; Sgt Christopher Calvin Cuff; Christopher Anthony Mendez; Christopher Andrew Sanderson; Matthew Steven-Fong; Cross Claimant Sgt Christopher Calvin Cuff; Cross Claimant |

| | | | Matthew Steven-Fong; Cross Claimant The Gardena Police Department; Cross Claimant Chief Edward Medrano; Cross Claimant Christopher Anthony Mendez; Cross Claimant The City of Gardena; Cross Claimant Christopher Andrew Sanderson |
|---|---|---|---|
| Hand service | **Raymond J Fuentes** Fuentes and McNally LLP 144 North Brand Boulevard Glendale, CA 91203-2602 818-543-4750 Fax: 818-543-4757 Email: fmllp@fm-llp.com | | Real Party In Interest **Defendant** Respondent re SDT Los Angeles County Sheriff's Department |
| Hand service | **Lindy F Bradley** **Carol Ann Humiston** Bradley and Gmelich 700 North Brand Boulevard, 10th Floor Glendale, CA 91203 818-243-5200 Fax: 818-243-5266 Email: chumiston@bglawyers.com; lbradley@bglawyers.com | | **Cross Defendant** SOUTH BAY REGIONAL PUBLIC COMMUNICATIONS AUTHORITY |
| Hand service | **Daniel Aaron Laidman** **Kelli L Sager** **Rochelle L Wilcox** Davis Wright Tremaine LLP 865 South Figueroa Street, Suite 2400 Los Angeles, CA 90017-2566 213-633-6800 Fax: 213-633-6899 Email: danlaidman@dwt.com; kellisager@dwt.com; rochellewilcox@dwt.com | | **Movant** Los Angeles Times Communications LLC; The Associated Press; Bloomberg LP |
| Email & Mail | **Jeffrey D Glasser** Los Angeles Times Communications LLC 202 West First Street Los Angeles, CA 90012 213-237-3760 Fax: 213-237-3810 Email: jeff.glasser@latimes.com | | **Movant** Los Angeles Times Communications LLC |
| Email & Mail | **James R Touchstone** Jones & Mayer 3777 North Harbor Boulevard Fullerton, CA 92835 | | **Amicus** California State Sheriffs' Association; Amicus |

| | 714-446-1400<br>Email: jrt@jones-mayer.com | California Police Chiefs'<br>Association |
|---|---|---|